(No. 43019.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PETER FISCHETTI, Appellant.

*Opinion filed November 18, 1970.*

SACHNOFF, SCHRAGER, JONES, & WEAVER, of Chicago, (LOWELL E. SACHNOFF, PHILLIP P. RUMMEL, and ROBERT D. EVANS, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and ZENON FOROWYCZ, (Graduate Law Student), Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Peter Fischetti, age 19, was found guilty of illegal possession of marijuana in a bench trial in the circuit court of Cook County, and sentenced to five years probation on condition that he receive necessary psychiatric treatment. Defendant's appeal to this court presents the issues of whether his alleged admissions violated the constitutional rights promulgated in *Miranda* v. *Arizona* (384 U.S. 436, 16 L. Ed. 694, 86 S. Ct. 1602); and whether the State proved beyond a reasonable doubt that the narcotics were

·in the immediate and exclusive control of defendant, and that he had knowledge of such possession.

On April 4, 1969, at approximately 8:00 P.M., ·police officers Schlobohn, Rigoni and Mays of the Chicago Police "Department went to a Lakeview Avenue address with a search warrant for Michael Fischetti, brother of the defendant, age 17, based upon information furnished Schlobohn ·by an undisclosed informant. The officers inquired of the apartment building doorman whether both Michael and Peter Fischetti were at home, and on being advised that they were, the officers went up to the apartment. Defendant answered the door in response to their knock. He had been sitting with his brother Michael in the latter's bedroom. The officers informed defendant that they had a search warrant for Michael, and proceeded to Michael's bedroom. Michael and defendant were then searched in the presence of their parents. Officers Rigoni and Schlobohn searched the bedroom closet, while officer Mays talked with the boys and their mother in the bedroom. Officer Rigoni found two plastic bags containing what appeared to be marijuana in the outside pocket of a suit coat in the closet.

The ensuing events are described differently by the witnesses. According to the testimony of Officer Schlobohn, the only witness for the State, he asked the boys immediately following the discovery of the marijuana, "Whose coat?" and defendant replied, "It's mine." The officer then asked, "Whose clothes are these?" and Michael replied, "Some are mine; some are my brother's." Officer Schlobohn then placed the boys under arrest and advised them of their .constitutional rights. He did not recall whether he disclosed finding the marijuana before asking about ownership of the coat, nor did he take possession of the coat. It was stipulated that the crime laboratory reports indicated that the two plastic bags found in the suit coat contained some 27.3 grains of marijuana.

Defendant gave diverse accounts of ownership of the

coat and of the marijuana in his testimony. He denied owning the coat in which the marijuana was found, and stated that it belonged to his brother. He also denied admitting to the officer that the coat was his, and insisted he wasn't even asked about such ownership. He stated that when Officer Rigoni asked whose marijuana it was, his parents nodded their heads, and he "just went along." At another point he testified that he made no statement as to the ownership of the marijuana, but later admitted that he answered "Yes" to Officer Rigoni's questions about whether the marijuana was his, or his brother's, or both. He stated: "And I said—my brother and I replied—'yes.' " Defendant further testified that he made no other oral statement "besides the acknowledgement that I made when we were in the house." "None besides that." At another point he refused to answer on grounds that he might incriminate himself.

Defendant introduced a light grey suit coat in evidence as the coat in which the marijuana was found. The officer, however, did not recognize the coat as the one in which the marijuana was found. Michael testified that the coat was his; that he had purchased that suit about two years ago; that he remembered putting one bag of marijuana in the inside pocket. Michael and defendant both tried on the coat in the courtroom. It fit Michael, but was apparently tight on defendant.

Defendant's mother testified that defendant had no grey suit, just a blue one, and otherwise slacks and jackets, none of which were grey. She was not in the room when the marijuana was discovered, but had gone with another officer to the back of the apartment where the room occupied by defendant, when he lived at home, was being searched.

It is undisputed that defendant was wearing a coat when he arrived at the Lakeview apartment on April 4, but was not wearing one when the police officers came in the bedroom. It is also undisputed that Michael pleaded guilty in the Juvenile Court to the charge of possession of marijuana

and was sentenced to two and one half months probation. The evidence further showed that defendant moved out of his parent's apartment on March 10, 1969, because of family conflicts. He had no key to the apartment but visited his brother there occasionally. From March 13 to the end of April, defendant lived in an apartment on Division Street where he had moved his clothing, room air-conditioner and personal effects, except for a stereo-speaker and some books. Defendant submitted rent receipts for the Division Street apartment for that period, and his brother Michael testified that he visited defendant there "just about every day."

Evidence in aggravation and mitigation revealed that defendant had no prior record, but only a pending Federal charge; that he had prior hospitalization for an emotional problem; and that the report of the Behavior Clinic found he had a sociopathic personality disturbance, but understood the charges against him. On the basis of all the foregoing evidence and information, the court sentenced defendant to probation for five years on condition that he receive necessary psychiatric care.

On this appeal defendant contends first that any alleged admissions respecting the suit coat or the marijuana violated his constitutional rights to counsel and against self-incrimination as promulgated by the United States Supreme Court in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

The rule of *Miranda,* requiring warning of the constitutional rights to counsel, and to remain silent before incriminating interrogation, is not limited to interrogations in police stations, but has been extended to questioning conducted in other places. (*Orozco* v. *Texas,* 394 U.S. 324, 327, 22 L. Ed. 2d 311, 89 S. Ct. 1095; *Mathis* v. *United States,* 391 U.S. 1, 4, 20 L. Ed. 2d 381, 88 S. Ct 1503; *United States* v. *Lackey* (7th cir. 1969), 413 F.2d 655, 657.) The *Miranda* rule was deemed violated in *Orozco* where defendant was questioned in his bedroom by four officers in the

early hours of the morning, while he was under arrest and not free to leave the premises; and in *Mathis,* where the incriminating questions were asked while defendant was in jail on an entirely separate offense; and in *Lackey,* where defendant was interrogated for hours under oath in a basement room of a post office while a tape recorder was in operation.

The *sine qua non* for invoking the *Miranda* rule is that the interrogation be focused on the accused while he is "taken into custody or otherwise deprived of his freedom of action [by the authorities] in any significant way." 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. 1602.

In contrast, here, even if it were assumed the inquiry had focused on defendant, he was questioned in the early evening in the familiar environment of his parents' apartment, in the presence of his parents and brother, and there certainly was no prolonged questioning involved. Under these circumstances defendant could not be deemed to be in "custody or otherwise deprived of his freedom of action in any significant way." There was neither the compulsions, nor the dangers of intimidation and trickery, which the *Miranda* rule was designed to eliminate. To extend the *Miranda* rule to the type of inquiry involved herein would distort the purport and plain language of that case.

We find the interrogation here analogous to that in *People* v. *Cerrato* (1969), 24 N.Y.2d 1, 246 N.E.2d 501, 505, where the *Miranda* rule was held inapplicable. Defendant there was interrogated about the possession of narcotics in his bedroom in the presence of members of his family. As in the case before us, defendant's admission was made immediately upon discovery of the narcotics, and in response to an inquiry by a police officer seeking to ascertain which of several persons having access to the apartment was involved. There, too, a member of the family (the brother-in-law) testified that he lived in the apartment and that the narcotics found beneath the "portable clothes

closet" belonged to him. The court concluded that defendant was not in a police dominated atmosphere, or inherently coercive setting, which would affect substantially his will to resist or compel him to speak, but rather "was in the familiar atmosphere of his home under circumstances indicating his freedom from any compelling influences. [Citation.]"

The statement of the court in *Cerrato* is apposite in the case before us. "Although the police officers were present in defendant's apartment pursuant to a lawfully issued search warrant, they did not arrest him or subject him to any restraint or period of questioning up to the time his admission was made. The credible testimony establishes that defendant was not under any restraint or restriction during the course of the search, but rather, moved freely about the apartment observing the officers' activities. Defendant's wife, mother-in-law and brother-in-law were also present in the apartment while the search was conducted."

Similarly, in *People* v. *Podney* (1967), 21 N.Y.2d 1, 11, 233 N.E.2d 255, 261, the court held that the rule of *Miranda* required only that the warnings be given "when the questioning takes place under circumstances which are likely to affect substantially the individual's will to resist and compel him to speak where he would not otherwise do so freely."

There is no showing in the case before us of any such circumstances likely to affect substantially defendant's will to resist and compel him to admit ownership of either the suit coat or the marijuana. We, therefore, find no violation of any of defendant's constitutional rights in this case.

Defendant argues further that the State did not establish the essential elements of the crime of possession of marijuana beyond a reasonable doubt. From the facts and circumstances in the case before us, as reviewed in this opinion, there is ample evidence from which a clear inference of possession of the narcotics by defendant could be drawn.

(*People* v. *Embry,* 20 Ill.2d 331, 335.) The jury having been waived, it was the province of the trial court to determine the credibility and weight of the testimony of the witnesses, and to determine the facts. The record shows that the trial judge gave lengthy and painstaking attention to the evidence, reviewing portions in open court at the request of counsel. The trial court found no facts to substantiate a reasonable doubt of defendant's guilt, and we find no error in that judgment.

*Judgment affirmed.*