THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID MAIDEN *et al.*, Defendants-Appellants.

First District (5th Division)    Nos. 1—87—0275, 1—87—0337 cons.

Opinion filed March 1, 1991.

George C. Howard, of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund, Sara Dillery Hynes, and Robyn Berman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

After a bench trial, defendant Leon Rayford was found guilty of manufacture and delivery of more than 30 grams of a controlled substance (PCP) and possession thereof with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(10)) and sentenced to 10 years in the Illinois Department of Corrections. Defendant David Maiden was found guilty of possession of less than 30 grams of a controlled substance (PCP) (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)) and sentenced to 2½ years' probation with the first six months served in the Cook County Department of Corrections.

The issues raised on appeal are: (1) whether the trial court erred when it denied defendant Maiden's motion to suppress his statement; (2) whether the trial court erred when it concluded that the State had produced sufficient evidence to establish residency of the search premises by defendant Rayford; (3) whether the trial court erred when it found defendant Rayford guilty of a Class X felony; (4) whether the trial court erred when it denied defendant Rayford's *Franks* motion to quash the search warrant and to produce the informant; and (5) whether the trial court erred when it denied defendant's "no knock" motion.

According to Officer Klunk of the Chicago police department, he went to 11664 South Vincennes Street on October 8, 1985, to execute a search warrant. Upon arrival, the officer observed defendant Maiden outside the residence. The officer was unsuccessful in his attempt to execute the warrant since defendant Maiden quickly entered the house and locked the door behind him. Officer Klunk testified that he yelled "police" and after receiving no response, he and nine other officers forcefully entered the residence. Upon entering, Officer Klunk observed defendant Maiden near the stairs leading to the basement. Officer Klunk, while having his gun drawn, grabbed Maiden. Officer Klunk detected an intense odor which he thought was PCP coming from the basement and thus asked defendant Maiden, "What are you doing, what did you do, or what is the odor?" Maiden responded that he had dumped PCP downstairs. Officer Klunk then proceeded downstairs to the basement, where he observed several jars containing chemicals.

While Officer Klunk proceeded to the basement, Officer Peck went upstairs to the bedroom where he found defendant Rayford in bed with a woman. Officer Peck searched the bedroom and found three "little bottle[s] that [were] crown royal—like you get drinks on the airplane full of liquid." The officer also recovered a gas bill and a bill of sale for the house in defendant Rayford's name, a tinfoil packet containing white powder, and men's clothing in the dresser drawers. Officer Peck then proceeded to the basement, where he observed bottles identical to the ones recovered in the bedroom. He also recovered $28,000 in cash and two plastic bags, one containing a crushed green plant and one containing a white powder.

Prior to trial, both defendants filed a variety of pretrial motions. Defendant Maiden filed a motion to suppress his statement regarding the PCP smell emanating from the basement. Defendant Rayford moved to quash the search warrant and produce the informant and also filed a "no knock" motion claiming that the officers failed to

knock and announce their office prior to forcibly entering the premises. The court denied defendant Maiden and Rayford's motions.

At trial, in addition to the above testimony, Odiest Washington, a forensic chemist for the Drug Enforcement Administration, testified that he smelled PCP and ether emanating from a trap in the basement and that he observed other evidence indicating the manufacture of PCP. Jean Dietrich, a chemist with the Chicago police department, testified that she preliminarily tested the three liquor bottles that were found in the bedroom of the house, and the tests indicated the presence of PCP. She stated that the individual weight of the liquid in the bottles was 23.11 grams, 27.02 grams, and 21.85 grams. The combined weight of the bottles was 66.98 grams. Her preliminary tests of all three bottles indicated the presence of PCP, but she conclusively tested the liquid from only one of the bottles, which tested positive for PCP.

Defendant Maiden rested at the close of the State's case, calling no witnesses on his behalf. Rayford testified on his own behalf. He testified that he never lived at 11664 South Vincennes, never received a bill for utility service at that address and had never been in the basement of the house on Vincennes. Ida Mae Brown then testified that she lived with defendant Rayford at the Michigan Plaza Hotel. Moreover, the manager and another employee of the hotel testified that Rayford was registered and paid rent at the hotel, but they were unaware whether Rayford actually resided there.

Defendant Maiden's first contention on appeal is that the trial court erred by not suppressing his reply to Officer Klunk's question regarding the odor emanating from the basement. Specifically, Maiden contends that he was in custody when he made the statement and therefore should have been advised of his *Miranda* rights before any questioning.

■ The prosecution may not use statements of the defendant stemming from custodial interrogation unless *Miranda* warnings have been given. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Custodial interrogation of a defendant means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way. Although *Miranda* rights must be given to an accused during a custodial interrogation, they are not necessary where the police conduct a general on-the-scene questioning as to the facts surrounding the crime. (*People v. Parks* (1971), 48 Ill. 2d 232, 269 N.E.2d 484, *cert. denied* (1972), 404 U.S. 1020, 30 L. Ed. 2d 669, 92 S. Ct. 692.) In determining whether a statement was made in a custo-

dial setting the court must evaluate whether a reasonable, innocent person would have felt free to leave. *People v. Savory* (1982), 105 Ill. App. 3d 1023, 435 N.E.2d 226.

Thus, the question in this case is whether defendant Maiden was subject to general on-the-scene questioning or whether he was under custodial interrogation and thus deprived of his freedom of action. In support of his contention that he was in custody, Maiden relies on *People v. Hentz* (1979), 75 Ill. App. 3d 526, 394 N.E.2d 586. In *Hentz*, two police officers received a radio message directing them to a Chicago address where they found the victim of a gunshot wound. After speaking with the wounded man, who stated that the defendant had shot him, the officers proceeded to the defendant's residence. When the defendant answered the door, an officer with gun drawn asked defendant what had happened. The defendant replied that he had had an argument with the victim and shot him. Although the officer admitted that he had not advised defendant of his rights prior to making the statement, he indicated that the defendant was not in custody or under arrest when he made the incriminating statements. The officer did, however, state that if the defendant attempted to run, he would have stopped him. *Hentz*, 75 Ill. App. 3d 528.

The court, in affirming the trial court's decision to suppress the statement, noted that this was not a crime scene questioning and the police considered the defendant a suspect prior to asking him the question. Moreover, the officers had no intention of letting defendant escape. Two police officers covered the back entrance to defendant's house and another testified that if defendant tried to run he would have been stopped. Moreover, the court stated that "of the greatest significance is the fact that at least one of the officers who greeted the defendant had his gun drawn." Based on these factors, the court determined that defendant was deprived of his freedom in a significant way and therefore should have been given his *Miranda* warnings prior to being questioned. *Hentz*, 75 Ill. App. 3d at 530.

The court reached a similar result in *People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d 571, in which the court concluded that the testimony adduced at the suppression hearing clearly showed that the defendant's statement was given during a period of custodial interrogation which necessitated *Miranda* admonishments. Four officers entered the defendant's home, with revolvers drawn, and ordered the partially clad man out of his bedroom. Defendant assumed a prone position on the floor and during that time an officer had his gun pointed at him. It was at that point that the defendant made a statement. The court therefore concluded that it was evident from

these facts that defendant's statement was given during a police-dominated atmosphere from which he was unable to leave. *Calderon*, 101 Ill. App. 3d at 478.

The State cites *People v. Fischetti* (1970), 47 Ill. 2d 92, 264 N.E.2d 191, and *People v. Kilfoy* (1984), 122 Ill. App. 3d 276, 466 N.E.2d 250, to support its argument that *Miranda* warnings were unnecessary. In *Fischetti*, police officers went to the defendant's parent's apartment equipped with a search warrant. The ensuing search uncovered marijuana in certain items of clothing which the defendant admitted owning. The supreme court found that the defendant's admission was not pursuant to a custodial interrogation in light of the fact that the questioning took place in a familiar environment, no prolonged questioning was involved, and there was no danger of intimidation. *Fischetti*, 47 Ill. 2d at 97.

Similarly, in *Kilfoy*, the police officers went to the defendant's home to execute a search warrant for a male defendant. The police were admitted into the house by a female codefendant. The officers asked her if she lived there and she said "yes." In affirming the trial court's denial of the defendant's motion to suppress, the court held that the officer's simple inquiry of the codefendant regarding whether she lived there did not amount to custodial interrogation even if the officer believed that the codefendant was not free to leave. *Kilfoy*, 122 Ill. App. 3d at 287.

■ The facts in the instant case are most similar to those in *Hentz* and *Calderon*. Officer Klunk testified that he and nine other officers entered the premises by force and that he had his gun drawn. He further testified that he grabbed Maiden by the arm and, at that time, defendant was not free to leave. Officer Klunk then asked Maiden about the odor emanating from the basement. This was clearly more than simple on-the-scene questioning. There was a danger of intimidation and a reasonable person would not have felt free to leave. Consequently, defendant Maiden was deprived of his freedom in a significant way and should therefore have been advised of his *Miranda* rights before being questioned.

■ Since the appropriate admonishments were not given to defendant before his statement concerning the odor emanating from the basement, the remark should have been excluded at trial. There are circumstances, however, where a failure to comply fully with *Miranda* warnings can be classified as harmless error. If it can be determined beyond a reasonable doubt that the error did not contribute to the conviction, a reversal on constitutional grounds is not warranted. (*People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d

571.) Under these circumstances, the error in the admission of the statement was harmless. Notwithstanding Maiden's remark, there was sufficient evidence from the testimony of the officers and the chemists on which the trier of fact could have relied to support the conclusion that the smell permeating from the basement was in fact PCP.

■ Defendant Rayford next contends that the trial court erred when it found that the State had produced sufficient evidence to establish residency of the search premises by him. To obtain a conviction for the unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the drug and that it was in his immediate and exclusive control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) Possession may be established by evidence of actual possession or constructive possession. (*People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.) Constructive possession may be proved by showing that the defendant controlled the premises where the narcotics were found. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077.) Whether the defendant had knowledge and possession are questions of fact for the trier of fact and will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to the defendant's guilt. *People v. Gallagher* (1990), 193 Ill. App. 3d 566, 550 N.E.2d 255.

Defendant Rayford maintains that a reasonable doubt exists as to whether defendant Rayford controlled the premises where the narcotics were found. Specifically, defendant notes that there was no evidence that defendant paid the mortgage, there was no evidence that defendant frequented the premises on a regular basis, there was no proof that he owned the clothing found in the bedroom, and three other men were present on the day of the arrest.

■ Defendant's argument is without merit. Defendant testified that he had in fact used 11664 South Vincennes as his official address. Moreover, the officers discovered a gas bill in defendant's name indicating 11664 South Vincennes as his address. Furthermore, the officers discovered a bill of sale for the residence referring to 11664 South Vincennes with defendant's name affixed to the "buyer" line. Men's clothing was found in the bedroom where defendant was found by the officers clad in his underwear. Moreover, defendant was discovered in bed with a female at the time of the officer's entrance. See also *People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665 (evidence

was sufficient to conclude that the premises were in defendant's control where the officers found personal papers and other correspondence addressed to defendant at that address and a large quantity of money and men's clothing there); *People v. Hester* (1980), 87 Ill. App. 3d 50, 409 N.E.2d 106 (evidence was sufficient to establish that defendant had exclusive control of the premises since defendant was present when the officers arrived, was dressed as if staying as opposed to visiting, there was men's clothing in the closet and defendant received his mail there); *People v. Miller* (1981), 97 Ill. App. 3d 970, 483 N.E.2d 1152 (evidence was sufficient to establish control in light of the fact that defendant was present when police entered the premises, various forms of identification including a utility bill were found bearing defendant's name and address, and defendant offered the specified address as her own when she was charged).

While defendant did present evidence that others had access to the premises, this alone does not mandate reversal because mere access to the premises by others is insufficient to defeat a charge of constructive possession. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.) Consequently, the evidence clearly established that defendant Rayford controlled the premises where the contraband was discovered.

Defendant Rayford next contends that since the expert chemist only conclusively identified contraband in one of the three samples, the conviction for possessing more than 30 grams of PCP must be reversed because the weight of the conclusively tested sample by itself falls short of the 30-gram minimum. The State, on the other hand, maintains that the case law in Illinois clearly demonstrates that a chemist need only randomly sample a substance in order to render an expert opinion on the whole.

▮▮ The general rule is that a chemist need only test random samples in order to be qualified to render an expert opinion as to the whole amount seized. (*People v. Kaludis* (1986), 146 Ill. App. 3d 888, 497 N.E.2d 360.) The trial court in the instant case relied on the decision in *Kaludis* to support its finding that defendant was in possession of 30 grams of PCP. In *Kaludis*, the issue was whether random sampling was sufficient to sustain a conviction for possession of 100 tablets suspected of being methaqualine. According to the forensic chemist, the tablets all exhibited the same physical characteristics with respect to size, shape and hardness and all were marked "Lemon 714." The chemist conducted tests on three randomly selected tablets which conclusively indicated the presence of methaqualine. The court on appeal concluded that since the State's expert testified that the

tablets were in fact homogeneous, random sampling provided a sufficient basis for proving beyond a reasonable doubt that all tablets contained a controlled substance. Moreover, the court noted that the record failed to demonstrate that any test performed by the chemist yielded a result indicative of differing compositions among the tablets or that they were other than homogeneous. *Kaludis*, 146 Ill. App. 3d at 895-96.

As the court in *Kaludis* noted, this rule is not without limitation. In *People v. Ayala* (1981), 96 Ill. App. 3d 880, 422 N.E.2d 127, the defendant was found to be in possession of two bags of a substance which the State claimed was heroin. The chemist testified that one bag weighed 19.35 grams and the other 15.32 grams. He subjected a portion of the contents of each of the bags to a series of chemical color tests which indicated that heroin might have been present in the sample. The contents of only one bag were conclusively tested by the chemist. The court in *Ayala* distinguished the cases *People v. Ohley* (1973), 15 Ill. App. 3d 125, 303 N.E.2d 761, and *People v. Yosell* (1977), 53 Ill. App. 3d 289, 368 N.E.2d 735, which have also been relied on by defendant in the present case, in light of the fact that in those cases the court was concerned with a large number of tablets, similar in appearance, from which a small number of tablets randomly selected were tested. The court concluded:

> "The situation here is not comparable. While the difficulty of analyzing 89 tablets or 1,000 tablets is evident, the difficulty in examining a portion from each of the two bags in question here is not evident. Apart from the expert testimony, it might be possible to conclude from other evidence that the substance was heroin. [Citation.] An inference that the untested bag contained heroin could be drawn from the fact that the preliminary test indicated heroin 'might' be present, and from the fact that defendant possessed both substances and from their physical similarity. This proof would be sufficient if the standard were that of the preponderance of the evidence, and is perhaps even clear and convincing, but we are not persuaded that the State has proved beyond a reasonable doubt that the untested bag in fact contained heroin." *Ayala*, 96 Ill. App. 3d at 882-83.

The court further stated that a test existed which could have proved, beyond a reasonable doubt, that the untested bag in fact contained heroin, yet it was performed on the contents of only one of the two bags. *Ayala*, 96 Ill. App. 3d at 883; see also *People v. Hill* (1988), 169 Ill. App. 3d 901, 524 N.E.2d 604 (since chemist only conclusively tested 3 of 63 bags of white powder believed to contain heroin, the

court concluded that conclusive test performed on only 21.93 grams of the powder was insufficient to prove beyond a reasonable doubt that over 30 grams of the powder seized in fact contained cocaine).

■ The instant case is similar to *Kaludis* in that chemist Deitrich testified that the samples all looked the same and smelled the same. Moreover, there is no testimony that the bottles were not in fact homogeneous. This case, however, is distinguishable from *Kaludis* and the other cases cited in support of the State's argument in that it involves a sample of three liquor bottles rather than a random sample of over 100 tablets or capsules. For this reason, the rule in *Ayala* and *Hill* should have been applied here. A test could have been performed to conclusively determine whether the substance in the other two bottles also contained PCP; yet, it was uncontroverted that conclusive tests were never performed on the other two bottles. Defendant was, however, clearly proved guilty beyond a reasonable doubt of possession of less than 30 grams of PCP. His conviction is therefore reduced to possession of less than 30 grams of a controlled substance and the cause is remanded for resentencing.

Defendant Rayford contends that the trial court erred by denying his *Franks* motion in light of Rayford's testimony that he did not live at 11664 South Vincennes, was not on those premises on October 6, 1985, the date that the informer was to have made the drug purchase, and that he did not sell drugs. Defendant also attached to his *Franks* motion affidavits from the manager and an employee of the Michigan Plaza Hotel stating that Rayford was registered at and paid rent at the hotel. It should, however, be noted that on cross-examination, Rayford stated that he had in fact used 11664 Vincennes as his address and was aware of a Federal seizure action pending against him and the residence on Vincennes.

■ Defendant's contention is without merit. In *Franks*, the Supreme Court announced a limited exception to the general rule that a defendant is precluded from attacking the veracity of the affidavit supporting the search warrant. (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) Under this exception, a defendant is entitled to an evidentiary hearing where he makes a substantial showing that an affiant, knowingly and intentionally or with reckless disregard for the truth, included a false statement in the warrant's affidavit. Furthermore, the defendant must show that the allegedly false statement is necessary to the finding of probable cause. A defendant's mere denial of the facts contained in the warrant's affidavit is insufficient to mandate an evidentiary hearing. *Franks*, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684; *People v. Lucente*

(1987), 116 Ill. 2d 133, 154, 506 N.E.2d 1269 (defendant's mere claim that "I didn't do it" would amount to an unsubstantiated denial and would be plainly insufficient in satisfying the substantial preliminary showing requirement).

■ In the case at bar, defendant merely claims that the statements contained in the affidavits in support of the search warrant were false. His mere conclusory statement that he did not live on the premises where the sale took place and that he was not on the premises on the date of the informant's alleged drug purchase is insufficient to require an evidentiary hearing. Moreover, the affidavits attached to defendant's motion merely state that he was registered as a guest at the Michigan Plaza Hotel; they do not create a substantial showing that defendant did not live at 11664 Vincennes and that a drug sale did not occur there on October 6, 1985. Consequently, defendant failed to make a preliminary showing that the officer lied or acted in reckless disregard for the truth, and, therefore, the trial court properly denied defendant's *Franks* motion.

Defendant next contends that the officers failed to knock or announce their authority prior to entering the premises at 11664 Vincennes. Specifically, defendant points to the testimony of the officers, claiming that there exists a conflict regarding whether or not the officers knocked or announced their authority.

■ First, it should be noted that it is the function of the trier of fact to determine the credibility of the witnesses and the weight to be given to their testimony. Furthermore, the trial court is not required to believe the defendant's testimony over that of the officers. (*People v. Trask* (1988), 167 Ill. App. 3d 694, 521 N.E.2d 1222.) Where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) Moreover, a trial court's ruling on a motion to suppress will not be set aside unless it is clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) Thus, defendant's contention that the trial court erred in believing the testimony of the officers is without merit.

■ Moreover, even if the officers in the present case had failed to knock and announce their office, there was sufficient evidence for the trial court to find that exigent circumstances excused the officers' failure. It is well established that although the failure of law enforcement officers to announce their authority and purpose prior to entering a dwelling is not necessarily a constitutional violation, the presence or absence of such an announcement is an important consideration in determining whether the subsequent entry to arrest

and search is constitutionally reasonable. (*People v. Saechao* (1989), 129 Ill. 2d 522, 544 N.E.2d 745.) Exigent circumstances may, however, in a proper case excuse the failure of officers to knock and announce before entering a dwelling to execute a warrant. (*People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507.) Exigent circumstances may encompass such considerations as danger to the police executing the warrant, the uselessness of the announcement or the ease with which the evidence may be destroyed. (*Ouelette*, 78 Ill. 2d at 518.) The supreme court in *Ouellette* rejected a blanket assertion that since drugs are easily destroyed, exigent circumstances are always present to warrant a forceable entry without a verbal announcement. Rather, the court stated that the police must have particular reasons to reasonably believe in a particular case that drugs will be destroyed. *Ouellette*, 78 Ill. 2d at 520.

■ In the case at bar, the trial court's denial of defendant's motion to suppress was not clearly erroneous. First, as noted above, it was indeed proper for the trial court to believe the officers' testimony that they did in fact knock and announce their authority. Moreover, exigent circumstances were present. The officers did indeed have particular reasons to believe that the evidence could have been destroyed. The officers were recognized by defendant Maiden prior to his hurried entry into the house. Defendant failed to respond to the officers' knock and announcement. In light of the fact that Maiden knew of the officers' presence, yet refused to allow them entrance to the house, the officers could have reasonably believed that the defendant was either attempting to destroy the drugs or to arm himself. Thus, even if the officers did not knock and announce their authority, sufficient exigent circumstances were present here warranting the immediate and forcible entry into the house.

For the reasons stated above, the judgment of the circuit court of Cook County convicting defendant Rayford of unlawful possession of more than 30 grams of a controlled substance with intent to deliver is modified to a judgment convicting defendant of possession of less than 30 grams of a controlled substance with the intent to deliver. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b).) As modified, the judgment of the circuit court of Cook County is affirmed, and the cause is remanded for resentencing. The conviction of defendant Maiden is affirmed.

Judgment affirmed as modified and remanded.

LORENZ, P.J., and GORDON, J., concur.