NOTICE
Decision filed 03/27/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230558-U

NO. 5-23-0558

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 22-CF-515 |
| | ) | |
| JOE D. SPEARMAN, | ) | Honorable |
| | ) | Benjamin W. Dyer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER* delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm defendant's convictions and resulting sentences, where the stipulated evidence of the weight of the drugs was sufficient to support a finding of guilt, and the prejudice prong for an ineffective assistance of counsel analysis cannot be satisfied.

¶ 2     Following a jury trial, defendant-appellant, Joe D. Spearman, was found guilty of unlawful possession of a weapon by a felon, armed violence, possession with intent to deliver a controlled substance containing cocaine, and possession with intent to deliver a controlled substance containing methamphetamine. Defendant was sentenced to the minimum aggregate sentence of 21 years in prison for the crimes. Defendant timely appealed. We affirm the jury's verdict and

_____

*Justice Moore was originally assigned to the panel. Justice Bollinger was later substituted on the panel and has read the briefs and listened to the oral argument recording.

1

sentence, where the stipulated evidence of the weight of the drugs was sufficient to support a finding of guilt and trial counsel was not ineffective as the evidence against defendant was overwhelming.

¶ 3                                I. BACKGROUND

¶ 4    For the purpose of this appeal we limit our recitation to those facts relevant to our disposition and include additional facts in the analysis section as needed to address the specific arguments. Defendant was charged with multiple counts stemming from an incident wherein he was lawfully stopped for driving 50 miles per hour in a 30-mile-per-hour zone. In the body camera footage admitted into evidence, Investigator Tim Frye of the Illinois Secretary of State Police voiced his concern that there was a firearm in the vehicle defendant was driving, stating that when he asked defendant if there were any firearms in the car, defendant turned to look at the front passenger and then responded no. In the body camera footage, Investigator Frye also stated that defendant had a warrant. Defendant was arrested for the warrant and informed Investigator Frye of the presence of unlawfully packaged marijuana in the car. The car was subsequently searched.

¶ 5    During the search of the car, a Gucci bag that the front passenger was holding was also searched. Inside the Gucci bag were four plastic bags containing suspected controlled substances, along with a Taurus PT 24/7 Pro .40-caliber semiautomatic handgun. Of the four plastic bags, one contained multiple pressed tablets of varying colors assumed to be MDMA, two contained a powdery substance believed to be powdered cocaine, and one contained a chunky substance believed to be crack cocaine. At trial it was stipulated that forensic scientist Julia Edwards of the Illinois State Police would testify that she analyzed the contents of the plastic bags and would testify to a reasonable degree of scientific certainty that "[t]he bag marked People's Exhibit 2 contained 30 grams of tablets that tested positive for the presence of methamphetamine" and "[t]he

2

bag marked People's Exhibit 3 contained several bags of a substance that tested positive for the presence of cocaine. The total weight of the substance was 4.6 grams."

¶ 6    After the weapon and controlled substances were discovered, Investigator Frye could be heard on the body camera footage asking defendant questions after defendant had been Mirandized. During the questioning, defendant stated that the vehicle he was driving was his friend's and that the Gucci bag the front passenger was holding did not belong to the front passenger, and that he had told her to "pick the bag up." Defendant denied any knowledge of the contents of the Gucci bag to police, stating about the Gucci bag, "what if the bag ain't nobody's?" When Investigator Frye asked if they might discover defendant's fingerprints inside the bag, defendant responded "probably."

¶ 7    Defendant was arraigned on April 27, 2022. During his arraignment, he was informed that officers located "8.13 grams of what is believed to be cocaine in three bags. They also found 31.25 grams of a substance believed to be MDM in multiple pills, as well as a Taurus 40 caliber pistol that was loaded."

¶ 8    Multiple clips from defendant's jail calls were presented to the jury, and the calls took place over the four-day span of April 28, 2022, to May 1, 2022, following his arraignment. In the call on April 28, defendant stated that he knew his fingerprints were on the firearm, but he "didn't know the drugs were up in there."

¶ 9    In a call on April 29, defendant stated that his "license was good, it was just the gun and the drugs was in the same place and I told this dumb ass bitch to cuff it and I'm like 'bitch 98% of the—the police force is—i—is male. They cannot search you. Cuff that shit.' " Defendant later stated in the same call that he did not know why she did not "cuff" the firearm and controlled substances, and he "would have took the charge for the gun, that ain't shit."

¶ 10    In the call on April 30, defendant stated that his plan was to "tell em 'I smoke crack, fuck is you talkin bout, ain't no manufacture and delivery, I smoke that shit.' 'Well why did you have crack and powder?' 'Well cause my crack dealer, he ran out of crack, and all he had was powder so I bought some of that so I could cook it up.' *inaudible and laughing* Fuck it, I'm trying to get drug court fuck, I'm trying to do anything to minimize my sentence." Defendant also said, while speaking about an acquaintance, "If I was out he would have been over [at defendant's residence] trying to get some powder for—uh—*imitating another's voice* 'man, you got something for me?' He would of—uh—he would have did it for some powder or some shit like that—that—that's that weird shit bro." Prior to the April 30 call there is no indication from the record that defendant had been informed that both crack cocaine and powdered cocaine were found in the Gucci bag, and defendant maintained throughout trial that he was unaware of the contents of the Gucci bag.

¶ 11    In the call on May 1, defendant stated his belief that he thought the traffic stop was a "set up" so his residence could be robbed. Defendant said that "a crackhead had gave me a 65 inch [television] for $150." The woman defendant was speaking to expressed being upset that he was incarcerated because she wanted to buy marijuana from him, to which he stated, "Don't trip, when I come back Imma still be the man though." Then, in recounting the day of his arrest, defendant stated:

> "The whole time the bitch owe me $200 for some pills, I—I was just *inaudible* I was just going to keep her around me. Let you get up off a mother fucker ass the minute they think shit sweet like you done forgot. So, you know what I'm saying, yeah I kept her with me, you know what I'm saying? Kept her around me. She owe me $200. So I was going to go bust a jug *inaudible* just to, you know what I'm saying, help her pay me some of my

4

bread back. Like, you know what I mean, like—like real shit *inaudible* how many mother fuckers you know finna do that? To take you to go do something *inaudible* like I said, it ain't coming out of your pocket bro. You already owe them, they finna help you clear your debt with some shit that they already got lined up. Like I could have just said fuck y'all, pay me what you owe me. But I gave you a way to get out of that, you know what I'm saying? And just for this shit to happen bro, the shit crazy."

¶ 12    At trial, Investigator Frye testified that defendant had $630 in cash on him at the time of his arrest. Investigator Frye also testified that the front seat passenger told him that defendant had given her the Gucci bag. Forensic scientist Svetlana Gershburg for the Illinois State Police testified that she was "confident that [defendant's] DNA is on the gun." During closing arguments, the State used a slideshow to highlight points it had already made in its argument.

¶ 13    Prior to jury deliberations, the trial court provided a number of instructions, including, *inter alia*, "Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." During deliberations, the jury submitted three questions: (1) "Can we see the transcript of the phone calls?" (2) "Is the phone call transcript at the prosecutor's closing slides as evidence?" and (3) "Can we get audio playback of the calls?" The trial court discussed what answers should be given to the jury for the questions. The trial court initially stated, "Let's play everything," in relation to the calls. Defendant's trial attorney objected, stating that she did not want the calls to be "harp[ed] on." The objection was overruled, and trial counsel later stated, "I do want to just clarify, I know when [the State] played the video he did go forward to different time stamps, and I just want to make sure that the—" The trial court interrupted, clarifying, "We're—we're only going to play for them what was published to them in the trial." The defense attorney replied,

5

"Okay, that's all I wanted to make sure." With the jury present, the trial court answered the first two questions with, "The jury has received all the evidence and the testimony and been given the instructions of law that apply." For the last question, the audio clips were replayed for the jury in the courtroom.

¶ 14    After jury deliberations, defendant was found guilty of armed violence; possession with intent to deliver a controlled substance, cocaine; possession with intent to deliver a controlled substance, methamphetamine; and unlawful possession of a weapon by a felon. On July 20, 2023, defendant was sentenced to 21 years total. Defendant was sentenced to 15 years with 18 months' mandatory supervised release for the armed violence charge to run concurrent with the weapon and cocaine sentences. Defendant was sentenced to 5 years for the unlawful possession of a weapon by a felon and 6 years for the possession with intent to deliver cocaine, with mandatory supervised release terms of 6 months and 12 months respectively. Finally, defendant was sentenced to 6 years for the possession with intent to deliver methamphetamine charge, with an 18-month mandatory supervised release, to run consecutive to the 15-year armed violence sentence. This appeal timely followed.

¶ 15                              II. ANALYSIS

¶ 16    Defendant argues two issues on appeal. First, defendant argues that the stipulation regarding the weight of the controlled substances was insufficient to satisfy the weight element of both possession charges, and therefore no rational trier of fact could have found him guilty of the two possession crimes. Second, defendant argues that trial counsel provided ineffective assistance in various ways.

¶ 17    The State argues two points in response. First, the State argues that the stipulation sufficiently outlined the weights of the controlled substances, thereby satisfying the weight

6

element of each possession crime. Second, the State argues that the evidence establishing defendant's guilt was overwhelming, foreclosing all ineffective assistance claims. In his reply, defendant clarifies that he is not contradicting the stipulated facts, rather he is challenging their sufficiency, and reasserted that trial counsel was ineffective. For the reasons that follow, we find that the stipulation sufficiently established the weight element of the possession crimes and the evidence was overwhelming, such that defendant cannot satisfy the prejudice prong of an ineffective assistance of counsel analysis.

¶ 18                                    A. Stipulation Sufficiency

¶ 19     We first address defendant's argument that the stipulation did not provide a sufficient basis to prove the weight element for the substances containing cocaine and the substances containing methamphetamine. Relevant to the weight element of the crimes, "A person who delivers or possesses with intent to deliver 15 or more grams but less than 100 grams of methamphetamine or a substance containing methamphetamine is guilty of a Class X felony," and "Any person who [possesses with intent to manufacture or deliver] [1 gram or more but less than 15 grams of any substance containing cocaine] *** is guilty of a Class 1 felony." 720 ILCS 646/55(a)(2)(C) (West 2020); 720 ILCS 570/401(c)(2) (West 2020).

¶ 20     "[A] person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When the court reviews a conviction to determine whether such right has been violated, "it must ask 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). "When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the

7

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Woods*, 214 Ill. 2d 455, 470 (2005) (citing *Jackson*, 443 U.S. at 318-19). "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005) (citing *People v. Evans*, 209 Ill. 2d 194, 209 (2004)). "In reviewing the evidence, it is not the function of the court to retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id.* (citing *Evans*, 209 Ill. 2d at 209).

¶ 21 "When a defendant is charged with possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996) (citing *People v. Williams*, 267 Ill. App. 3d 870, 879 (1994)). "A chemist, however, generally need not test every sample seized in order to render an opinion as to the makeup of the substance of the whole." *Id.* at 429 (citing *People v. Maiden*, 210 Ill. App. 3d 390, 398 (1991)). "Rather, random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." *Id.* (citing *People v. Hill*, 169 Ill. App. 3d 901, 912 (1988)). "However, when such samples are not sufficiently homogenous, a portion from each container or sample must be tested in order to determine the contents of each container or sample." *Id.*

¶ 22 "The law is well established that an accused may, by stipulation, waive the necessity of proof of all or part of the case which the People have alleged against him. Having done so, he cannot complain of the evidence which he has stipulated into the record." *People v. Polk*, 19 Ill.

8

2d 310, 315 (1960) (citing *People v. Pierce*, 387 Ill. 608, 612 (1944)). "Stipulations relating to evidence should be construed to give effect to the intentions of the parties, and they should be broadly construed in furtherance of justice. Such stipulations are binding and conclusive on the parties." *People v. Early*, 158 Ill. App. 3d 232, 239 (1987) (citing *People v. Buford*, 19 Ill. App. 3d 766, 770 (1974)).

¶ 23 In his brief, defendant asserts, "The State is not relieved of its burden of proof simply because evidence is offered by way of stipulation." To support his assertion, defendant cites *People v. Irby*, 2015 IL App (3d) 130429. We do not find *Irby* supportive of defendant's argument. In *Irby*, the stipulation failed entirely to outline one of the elements of the charged offense. That, however, is not defendant's issue here. Defendant argues that the stipulation's description was not sufficient to establish the required weight for the tablets containing methamphetamine and the weight for the substances containing cocaine to support defendant's convictions. Defendant cites no authority that is on point to his argument as applied to the facts of this case. None of the cases cited by defendant involved this type of stipulation being held insufficient. Further, defendant makes assumptions about the nature of the testing performed by the chemist that are not supported by the record in this case. We disagree with defendant's unsupported contention that the stipulation was not sufficient to establish the weight element of the charges he was convicted of.

¶ 24 As stated previously, the stipulation provided that "[t]he bag marked People's Exhibit 2 [which] contained 30 grams of tablets that tested positive for the presence of methamphetamine" and "[t]he bag marked People's Exhibit 3 [which] contained several bags of a substance that tested positive for the presence of cocaine. The total weight of the substance was 4.6 grams." Therefore, the stipulation was sufficient to establish the weight element for the crimes of possession with intent to deliver methamphetamine and cocaine respectively.

9

¶ 25                     B. Ineffective Assistance of Counsel

¶ 26     We next address defendant's arguments that trial counsel provided ineffective assistance, alleging trial counsel was ineffective for: (1) entering the stipulation regarding the weight element of the methamphetamine- and cocaine-related offenses, (2) not objecting to the evidence that the firearm was loaded, (3) not objecting to a potential hearsay statement, (4) not severing the unlawful possession of a weapon by a felon charge, (5) not choosing to provide the name and nature of defendant's prior felony and seeking a limiting instruction for the use of the felony, (6) not properly handling the use of the jail calls, and (7) not objecting to the trial court's response to jury questions. Defendant additionally argues that the alleged cumulative errors of his trial counsel denied him a fair trial.

¶ 27     The analysis for ineffective assistance of counsel is two-prong. First, "defendant must show that [trial] counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, "defendant must show that there is a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "To prevail, the defendant must satisfy both prongs of the *Strickland* test. [Citation.] The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of [trial] counsel." *People v. Yankaway*, 2025 IL 130207, ¶ 62.

¶ 28     "The benchmark for judging any claim of ineffectiveness must be whether [trial] counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "When a convicted defendant complains of the ineffectiveness of [trial] counsel's assistance, the defendant must show that [trial] counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "[T]he performance inquiry must be whether [trial] counsel's assistance was reasonable

10

considering all the circumstances." *Id.* at 688. When reviewing trial counsel's performance, we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of [trial] counsel's challenged conduct, and to evaluate the conduct from [trial] counsel's perspective at the time." *Id.* at 689. "[A] court must indulge a strong presumption that [trial] counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Id.* "Matters of trial strategy are generally immune from claims of ineffective assistance of [trial] counsel." (Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 327 (2011).

¶ 29    "An error by [trial] counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *** Accordingly, any deficiencies in [trial] counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 691-92. "[D]efendant must show that there is a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Where evidence of defendant's guilt is overwhelming, defendant is unable to satisfy the prejudice prong of the *Strickland* analysis. *People v. Smith*, 341 Ill. App. 3d 530, 544 (2003). Where defendant has not or cannot establish due to the "overwhelming evidence of defendant's guilt" that, but for the alleged errors, "there was a reasonable probability that the result of this case would have been altered," the court rejects the argument "that the cumulative effect of trial counsel's errors denied him the effective assistance

11

of counsel." *People v. Ward*, 187 Ill. 2d 249, 263 (1999) (citing *People v. Ward*, 154 Ill. 2d 272, 317-18 (1992)).

¶ 30 Ineffective assistance of trial counsel "requires a bifurcated standard of review, wherein a reviewing court must defer to the trial court's findings of fact unless they are against the manifest weight of the evidence but must make a *de novo* assessment of the ultimate legal issue of whether [trial] counsel's omission supports an ineffective assistance claim." *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67 (2006). Where the facts surrounding the claim are undisputed, the review is *de novo*. *Id.* at 1167.

¶ 31 Defendant's argument regarding ineffective assistance fails for lack of a showing, both independently and cumulatively, of prejudice. Here, the record overwhelmingly supports a finding of defendant's guilt, and it cannot be said that there is a reasonable probability that the result in this case would have been different but for the alleged errors.

¶ 32 The overwhelming evidence forecloses a potential showing of prejudice. Defendant's DNA was in the Gucci bag. Defendant told Investigator Frye that he gave the bag to the front seat passenger and that his fingerprints would "probably" be in the bag. Defendant was recorded on a jail call stating again that his fingerprints would be on the gun. Defendant was recorded on another jail call stating that he told the front passenger to "cuff" the bag and that because 98% of police are male, they would not be able to search her. This discussion suggests that defendant was telling her that the police would not be able to search her because she was a woman and most police are men and to hide the bag somewhere on her person. Defendant was apprehended with $630 in cash on him. Defendant was recorded on a jail call discussing his plan of how he would tell "them" he planned to consume all of the "crack" and "powder," despite the fact that defendant earlier denied any knowledge of the contents of the bag and had not been previously informed that both forms of

12

cocaine were in the Gucci bag. Defendant was recorded talking about an acquaintance always trying to get "powder" from him, a "crackhead" selling him a television at a presumably discounted rate, and talking about how one of the passengers in the car he was driving before he got arrested owed him "$200 for some pills." The evidence overwhelmingly supports his convictions, such that prejudice cannot result from trial counsel's alleged ineffective assistance. Though the issues of ineffective assistance are adequately foreclosed due to the overwhelming evidence, we choose to more specifically address defendant's arguments regarding severance, the jail calls, and the jury questions.

¶ 33    Regarding severance, defendant argues that he received ineffective assistance when trial counsel failed to sever the unlawful possession of a weapon by a felon charge from the other three charges. Defendant goes on to assert that "nothing in the record indicated counsel chose not to file a severance motion as part of an 'all or nothing' strategy." The record reflects differently. In her opening statement, defendant's trial counsel cast doubt on the reliability of the presence of defendant's DNA on the firearm without the presence of his fingerprints. During cross-examination of forensic scientist Gershburg, trial counsel elicited testimony regarding inadvertent DNA transfer. Also, during redirect examination of forensic scientist Long, trial counsel again elicited testimony regarding inadvertent DNA transfer. From the record, it appears that trial counsel was pursuing an all-or-nothing approach by eliciting testimony to suggest defendant's DNA was in the bag for a reason other than him owning the bag and the contents therein. " 'The mere fact that an "all-or-nothing" strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance.' " *People v. Lacey*, 2023 IL App (5th) 220050-U, ¶ 45 (quoting *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 28). "While, in hindsight, the decision not to seek a severance may have proved unwise, we cannot say that the decision to meet

13

[multiple] charges at the same time was not a conscious, deliberate choice of strategy calculated to improve the defendant's chances of acquittal." *People v. Turner*, 36 Ill. App. 3d 77, 81 (1976).

¶ 34 Regarding the jail calls, defendant asserts that trial counsel was ineffective for failing to include an additional 25 seconds from the calls that would have provided important context for the clips already provided to the jury. Defendant also asserts that three portions of the calls were irrelevant and overly prejudicial, and should have been objected to. Also, relevant to the calls, defendant asserts that Inspector Frye provided improper lay witness opinion testimony while the recordings were being played, and should have been objected to.

¶ 35 Regarding the additional 25 seconds of jail calls, defendant overstates its importance. Defendant asserts that the five seconds where defendant discusses an acquaintance being in jail for similar charges would have provided context that would have conveyed the true meaning of his statements to the jury. These five seconds do not, however, change the nature of what he stated next, which, rephrased, was that he told the front passenger to hide the bag containing the contraband on her person because the police likely would not be able to search her. Defendant also asserts that the 20 seconds wherein he spoke about waiting for an offer changed the nature of his statement that he had the "gun with the drugs." These extra seconds of the jail call likewise do not provide additional context that changes the nature of the calls.

¶ 36 Defendant also suggests clips of the jail calls should have been excluded for lack of relevancy. Defendant disputes the relevancy of those portions of the calls where he speaks about a "crackhead" selling him a 65-inch television for $150, an acquaintance only wanting to help him out for cocaine, and a discussion about the cost of marijuana. All three clips were relevant, as they all provided discussion regarding potential clients for defendant's drug-dealing enterprise. "Evidence is deemed relevant if it has any tendency to make the existence of any fact that is of

14

consequence to the determination of the action more or less probable than it would be without the evidence." *Ford v. Grizzle*, 398 Ill. App. 3d 639, 646 (2010) (citing *Fronabarger v. Burns*, 385 Ill. App. 3d 560, 564 (2008)).

¶ 37    Defendant also cites our decision in *People v. Hampton*, 2021 IL App (5th) 170341, to support his assertion that Investigator Frye provided improper opinion testimony by testifying to what he was hearing in the jail calls. We concluded in *Hampton* that testimony about the contents of a recording "by a witness with no firsthand knowledge of the events depicted is treated as the opinion testimony of a lay witness," and is inadmissible. *Id.* ¶ 83. Even if Investigator Frye's testimony in this regard was objectionable, defendant cannot satisfy the prejudice prong of the ineffective assistance analysis, as we similarly found to be the case in *Hampton*. *Id.* ¶¶ 82-89.

¶ 38    Finally, regarding the answers to the jury's questions, both sides wanted different information included or excluded, and neither party got entirely what they wanted. The State wanted the jury to be told a transcript of the calls did not exist, and trial counsel objected to the calls being played again. The trial court had the calls played for the jury despite trial counsel's objection. "When faced with a question from a jury, a trial court should exercise its discretion in answering or refraining from answering the jury question." *People v. Alexander*, 2019 IL App (3d) 160709, ¶ 17 (citing *People v. Millsap*, 189 Ill. 2d 155, 161 (2000)). "[T]he court should refuse to answer if an answer would express the court's opinion on the evidence or would probably direct a verdict." *People v. Gray*, 346 Ill. App. 3d 989, 993 (2004) (citing *People v. Reid*, 136 Ill. 2d 27, 39-40 (1990)). Throughout the record it is apparent that the trial court was operating with an abundance of caution, making record of everything down to a juror thanking the trial court for donuts. Prejudice would not result from the lack of an additional objection here, where the result

15

would most likely not have been to provide a different answer out of caution not to inadvertently direct the verdict. Accordingly, trial counsel did not provide defendant ineffective assistance.

¶ 39                                 III. CONCLUSION

¶ 40    Therefore, we affirm the defendant's convictions and sentence, where the stipulation was sufficient to establish the weight element essential to two of the crimes, and trial counsel did not provide defendant ineffective assistance.

¶ 41    Affirmed.