THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 1—92—3509

Opinion filed October 31, 1994.

Serpico, Novelle & Navigato, Ltd., of Chicago (Robert A. Novelle and Joel A. Whitehouse, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Katherine S.W. Schweit, and Lisa Repiscak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant Keith Williams was found guilty of possession with the intent to deliver more than 100 grams but less than 400 grams of a controlled substance containing cocaine. (Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 1401(a)(2)(B) (now 720 ILCS 570/401(a)(2)(B) (West 1992)).) The trial judge sentenced defendant to 14 years in the Illinois Department of Corrections. On appeal, defendant contends: (1) that the State failed to prove that he knowingly possessed a controlled substance containing cocaine; (2) that the State failed to establish that he possessed more than 100 grams but less than 400 grams of a controlled substance containing cocaine; (3)

that he was denied the effective assistance of counsel when his attorney failed to make a motion for a directed finding at the close of the State's case, failed to argue and cite relevant Illinois case law favorable to his client, and stipulated to inconclusive laboratory test results prejudicial to his client; and (4) that the trial judge committed reversible error when, over defense objections, he admitted improper evidence of other crimes and acts and the judge's comments indicated that he relied upon that evidence in convicting defendant.

At trial, the State called three witnesses: Charles Hawkins, a United Parcel Service (UPS) security investigator, Detective James Hennigan, a Chicago police officer, and Detective Raymond Schnoor, a Chicago police officer.

### TESTIMONY OF CHARLES HAWKINS, UPS SECURITY INVESTIGATOR

On October 15, 1991, a UPS driver attempted unsuccessfully to deliver a package sent from "K. Creesbo, 13500 Crenshaw Boulevard, Gardena, California," to "C.M. William, 1000 West 100th Street, Chicago, Illinois, 60649." When the package was returned to the UPS facility, Hawkins made several attempts to locate the intended receiver of the package. There was no "C.M. William" listed in the phone book at the address on the package, however, and the person who answered at the "sender's" address in California stated that he knew no such person by the name of C.M. William. Hawkins then opened the package and discovered two pairs of pants. In the pockets of the pants, he found "three plastic bags containing a tan hard substance" which, in his experience, he recognized to be narcotics. He then closed the box and notified the narcotics division of the Chicago police department.

Several Chicago police officers arrived and tested the substance in the bags. While the officers were present, Hawkins received a telephone call from a person identifying himself as "C.M. William." This caller stated that he needed to pick the box up as soon as possible "because it was a birthday present." Hawkins told the caller he could come pick the box up and the police set up surveillance at the UPS customer service counter.

Subsequently, defendant arrived at the UPS facility and identified himself to Hawkins as "C.M. William." Defendant stated that he did not have his identification with him, but that the package was a gift for his father. He then signed for the package as "C.M. William." Hawkins denied telling defendant to sign the name which appeared on the package. Hawkins gave the package to defendant and defendant left the UPS facility.

## TESTIMONY OF DETECTIVE JAMES HENNIGAN

Detective Hennigan was assigned to the Chicago police department's organized crime division, narcotics section, at the time of the incident and had been an officer for 12 years. On October 15, 1991, he and several other officers went to the UPS facility and spoke with Hawkins concerning the package addressed to "C.M. William" which Hawkins had opened. He observed the opened package and noticed "a series of plastic bags, I believe two plastic bags with a number of smaller plastic bags, clear plastic bags inside them." Hennigan "field tested" a sample of the substance in the bags and it "tested positive for cocaine."

Hennigan then withdrew a portion of the substance for evidentiary purposes, left the remainder in the box and resealed the package in order to set up a controlled delivery of the package to whoever came to retrieve it. Hennigan stationed himself within the facility while other officers watched the front of the building. When defendant arrived, Hennigan observed him speak with Hawkins, saw him sign for the package, and then watched him leave the facility with the package. Hennigan followed defendant and notified the officers outside the facility that defendant was leaving. Defendant was arrested outside the UPS facility and taken to the police station. Calvin Cross also was arrested outside the facility.

Prior to speaking with defendant at the police station, Hennigan discovered that there was no person by the name of "Creesbo" at the package's return address in California. He also discovered that Calvin Cross resided at the receiver's address in Chicago.

At the police station, defendant gave Hennigan his California driver's license, which listed his address as 1612 West 109th Street in Los Angeles, California. He told Hennigan he was staying at 1000 West 100th Street and that he had a weapon at the address. Hennigan also interviewed Calvin Cross, who signed a consent to search form for his residence.

Hennigan stated that the packages found inside the box were inventoried and sent to the crime lab. He described the packages as follows:

> "There were two large plastic bags left in the box. Those bags, one contained three smaller clear plastic bags containing the suspect substance. And another contained four smaller clear plastic bags containing the substance. And we held out two clear plastic bags containing the substance."

Hennigan recalled that the laboratory results were "confirmatory" for cocaine and he estimated that "[w]ith the packaging, it weighed out to, if I recall, 294 grams, I believe." Defendant objected because

the cocaine did not weigh 294 grams according to the laboratory report. The judge responded that "I don't know what the lab says at this point." The judge said that, according to Hennigan's testimony, the substance was "confirmatory for cocaine" and the substance weighed approximately 294 grams *with the bags.*

Officer Hennigan then gave testimony on the numerous ways the cocaine could be packaged for sale, that the value of this amount of cocaine was approximately $41,000, and that the cocaine was "[d]efinitely not for personal consumption *** [i]t was for street sales."

Hennigan then stated that "the two envelopes that we withheld" were given inventory number 949253 and tested positive for 247.4 grams of cocaine. At this point, defense counsel stated "[w]e will stipulate to the lab." The prosecutor then asked Hennigan if he also inventoried "a second package under Inventory Number 949254," which also was sent to the laboratory. After an affirmative response, the prosecutor asked, "those two inventory numbers came out to the 247 grams; is that correct?" Hennigan responded, "That's my understanding, yes."

Hennigan denied that defendant ever mentioned to him a person named "Siaz."

### TESTIMONY OF DETECTIVE RAYMOND SCHNOOR

Detective Schnoor was a 20-year veteran of the Chicago police department at the time of the incident. On October 15, 1991, he set up surveillance outside the UPS facility. At approximately 3:30 p.m., he observed a copper-colored Lincoln automobile park just north of the entrance to the UPS facility. The driver, Calvin Cross, stood outside the car and waited while the defendant entered the UPS office. When the defendant exited the facility with the package, Schnoor placed him under arrest, read him his rights, and asked him about the box he was carrying under his arm. According to Schnoor, defendant responded, "What box? *** I don't know what you are talking about."

At the same time that Schnoor arrested defendant, several other officers arrested Cross a short distance away after he attempted to flee the area. Over defense objection, Schnoor testified that a loaded pistol was discovered in Cross' car when he was arrested.

At the station, defendant told Schnoor that he was staying with Cross in Chicago and that he had a handgun at Cross' apartment. Subsequently, during a search of Cross' apartment, Schnoor discovered a fully loaded weapon which had been legally purchased by defendant.

Officer Schnoor also gave his opinion as to how the cocaine could be packaged for street sales. Additionally, he stated that two packages under inventory numbers 949253 and 949254 were sent to the police crime laboratory and "tested positive for approximately 247 grams of cocaine." Defense counsel then piped in, "at this time, we will stipulate that this was sent to the crime lab—I mean I am not demanding that the chemist come in and testify."

On cross-examination, Schnoor denied that defendant had told him that he was picking up the package for a friend he knew in California.

### STIPULATIONS

At the close of the State's case, the parties entered into several stipulations. The parties first stipulated that two clear plastic bags inventoried by Hennigan were sent to the crime laboratory under both defendant's name and the inventory number 949253; that the substance in the two clear plastic bags was tested; that it was positive for cocaine; and that the "estimated" weight of the substance was 61.36 grams. The parties further stipulated that seven smaller packages also were inventoried by Hennigan and sent to the crime lab under the defendant's name and under inventory number 949254; that the substance was tested; that it was positive for cocaine; and that its "estimated" weight was 186.5 grams. Finally, the parties stipulated that "the chain of custody was proper in each and every respect from the time of the arrest and confiscation of the evidence on October 15th to today's date."

### TESTIMONY OF DEFENDANT

After a 10-minute break, defendant testified in his own behalf. He was a 23-year-old college student and had never been accused of or arrested for a felony. He lived with his aunt in California and his mother lived on a farm in Bristol, Florida. He had flown to Chicago to meet his cousin and then they were going to drive down to Florida to see his mother.

He denied having sent the package to himself and said he did not know anyone named "Creesbo." According to defendant, he played basketball on Sundays with a person named "Siaz." Siaz had asked defendant the Sunday before he left for Chicago if he would pick a package up for him in Chicago. Siaz told him the package was a birthday present for his girl friend in Chicago.

Defendant asserted that he did not know what was in the package. He called UPS inquiring about the package because UPS had called him. When he arrived at the UPS facility, he spoke with

Hawkins. He told Hawkins that he was there "to pick up a box for William." He also informed Hawkins that he had identification, but it was "not the same as on the box." Defendant began to leave when Hawkins called him back and told him "next time have the proper name on the box that matches the ID to pick it up." Defendant asked Hawkins how to sign for the package and Hawkins told him to sign "the name that is on the package." Defendant was then going to take it back to the house to "wait for Mr. Siaz to come pick it up because we were leaving the next day." Siaz had plans to come to Chicago, but he had asked defendant to pick up the package because "he might not make it out here in time." Defendant did not know where Siaz lived. However, if Siaz was not going to make it, "he said he would call and let us know and he would give us the address *** for her."

Defendant stated that he told both Officer Martin and Hennigan about Siaz.

## COURT'S RULING

After reviewing the testimony of the witnesses, the trial judge stated that "credibility takes a big seat in cases such as these." He asserted that he did not believe "a word" of defendant's testimony and did not believe that any person named Siaz existed. He concluded by stating, "there [are] 247 grams of cocaine, the guns involved. I believe there is more than enough evidence for possession with intent beyond a reasonable doubt." The judge then found defendant guilty of possession with the intent to deliver more than 100 grams but less than 400 grams of a controlled substance containing cocaine.

Defendant then filed this timely appeal.

## DISCUSSION

Defendant's first contention on appeal is that the State failed to prove that he knowingly possessed a controlled substance containing cocaine.

In order to convict an accused of unlawful possession of narcotics with the intent to deliver, the State must establish that the narcotics were in the immediate control or possession of the accused, that the amount of narcotics was in excess of any amount which might be viewed as merely for personal use and *that the accused had knowledge of the presence of the narcotics. (People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 333, 576 N.E.2d 1030, 1037.) Given the illegitimate nature of narcotics, however, the element of knowledge is rarely susceptible of direct proof (*People v. Ortiz* (1980), 91 Ill. App. 3d 466, 470, 444 N.E.2d 1072, 1075) and, therefore, "may be proved by evidence of acts, declarations or conduct from which it may fairly be

inferred that the accused knew of the existence of the narcotics at the place they were found." (*People v. Bell* (1972), 53 Ill. 2d 122, 126, 290 N.E.2d 214, 217.) Additionally, the determination of whether the accused had the requisite knowledge is a question of fact for the jury or, where a jury is waived, a question for the court acting as the trier of fact. (*Ortiz*, 91 Ill. App. 3d at 471, 414 N.E.2d at 1076.) The fact finder's determinations will not be disturbed on review unless "the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and thus creates a reasonable doubt of guilt." *Witherspoon*, 216 Ill. App. 3d at 333, 576 N.E.2d at 1037.

Defendant asserts that this case is "remarkably similar" to *People v. Ackerman* (1971), 2 Ill. App. 3d 903, 274 N.E.2d 125. *Ackerman*, however, is not as analogous as defendant would have us believe. In *Ackerman*, a post office employee became suspicious of a package which was addressed to "Gary Lang c/o Jeffrey Ackerman, 916 Henninger, Macomb, Illinois," because, although the package was wrapped as if it were a book, it rattled when it was shaken. A subsequent search of the package revealed 140 LSD tablets. The police then resealed the package and set up surveillance of the university dormitory where the package was delivered. Defendant arrived at the dormitory, retrieved a notice from his mail box that there was a package for him, went directly to the counter where packages were delivered, presented the notice, picked up the package and headed for the elevator. He was immediately arrested.

The *Ackerman* court held that the State had failed to prove that defendant had knowing possession of the drug. The court reasoned that, although the element of knowledge seldom can be directly proved, defendant committed no "acts, declarations or conduct which fairly support any inference of knowledge." (*Ackerman*, 2 Ill. App. 3d at 905, 274 N.E.2d at 127.) The court recognized that defendant's conduct was normal and unsuspicious and that all the evidence showed was that "defendant received a package in the course of normal mail delivery and placed the package under his arm for about five seconds." *Ackerman*, 2 Ill. App. 3d at 905-06, 274 N.E.2d at 127.

■ Unlike in *Ackerman*, defendant's declarations, acts and conduct in this case were not normal. First, defendant's exculpatory story about a mysterious man named "Siaz" is suspicious at best. His entire explanation as to why he was picking up the package for Siaz's girl friend raises numerous unanswerable questions. Additionally, according to the State's witnesses, defendant first said the package was a gift for his father. Later, he asserted it was a birthday gift for Siaz's girl friend. When he arrived to pick up the package, defendant

stated that he did not have any identification with him. Moments later, when he was arrested and taken to the police station, however, he immediately produced his driver's license from his wallet. Moreover, when he was arrested upon exiting the UPS facility, he was asked about the box under his arm. According to Schnoor, his response was, "What box? *** I don't know what you are talking about." Finally, when his companion Cross saw defendant being arrested, Cross attempted to flee the scene. This merely may have shown Cross' guilty conscience, but defendant, nevertheless, did not assert that Cross was the guilty party.

In our opinion, knowledge of the contents of the package could be inferred from defendant's suspicious exculpatory explanation, his inconsistent and conflicting statements, and the consistent description of events related by the State's witnesses in conjunction with all the other circumstances. See *People v. Statham* (1991), 209 Ill. App. 3d 352, 568 N.E.2d 183.

Defendant's second contention on appeal is that the State failed to establish that he possessed more than 100 grams but less than 400 grams of a controlled substance containing cocaine. Specifically, defendant asserts that the required weight was not established because the prosecutor's phrasing of the weights was as "estimated" weights and because the laboratory test results show that the total "confirmatory" weight of the tested cocaine was less that 100 grams.

We must agree with defendant's assertion that the State failed to prove beyond a reasonable doubt that he was in possession of more than 100 grams but less than 400 grams of cocaine.

The record shows that, after Hennigan testified that the total approximate weight of the confiscated substance was 246 grams, defense counsel stated, "[w]e will stipulate to the lab." Subsequently, when Schnoor testified that the confiscated substance "tested positive for approximately 247 grams of cocaine," defense counsel again asserted that he would not demand "that the chemist come in and testify" and that he would stipulate that the substance was sent to the lab. At the close of the State's case, the parties stipulated that if the chemist was called to testify he would state that he tested two plastic bags under inventory number 949253 and that the substance in the bags tested positive for cocaine with an "estimated" weight of 61.36 grams. The parties also stipulated that the chemist tested the packages under inventory number 949254 and that the substance in the bags tested positive for cocaine with an "estimated" weight of 186.5 grams.

The laboratory reports, however, show that the chemist actually only performed "confirmatory" testing on one of the two bags under

inventory number 949253 and one of the seven bags under inventory number 949254. According to these reports, the bag inventoried under number 949253 weighed 31.44 grams and the bag tested under number 949254 weighed 25.32 grams.

We cannot agree with the State that defense counsel conceded that the entire amount of the drugs in all the packages was cocaine or that defendant, in fact, was in possession of more than 100 grams of cocaine. He merely stipulated to the chemist's testimony, which would have been that the "estimated" combined weight of the confiscated substance was approximately 247.86 grams. The chemist, however, could have only confirmed that 56.76 grams of the substance contained cocaine.

It is established law that, when a defendant is charged with possession of a certain amount of a controlled substance with the intent to deliver and there is a lesser included offense for possessing a smaller quantity, the weight of the substance containing the drug is an essential element of the crime charged and must be proved beyond a reasonable doubt. (*People v. Hill* (1988), 169 Ill. App. 3d 901, 911, 524 N.E.2d 604, 611, *appeal denied* (1988), 122 Ill. 2d 585, 530 N.E.2d 256.) Although the chemist does not need to test every gram of a substance to give an opinion as to the whole (*People v. Games* (1981), 94 Ill. App. 3d 130, 131, 418 N.E.2d 520, 521), where the substance is packaged in separate bags or containers, he must test a sample from each bag or container in order for the State to show that that particular bag contained the drug. *People v. Williams* (1990), 200 Ill. App. 3d 503, 515, 558 N.E.2d 261, 268.

■ Here, since the laboratory tests only confirmed that two bags with a combined weight of 56.76 grams contained cocaine, the State was wholly unable to meet its burden to establish beyond a reasonable doubt that defendant was in possession of more than 100 grams of cocaine. Moreover, Hennigan's testimony indicates that the substance inventoried under number 949253 was "withheld" from the UPS package before it was delivered to defendant. At best, therefore, defendant only exercised control over the substance inventoried under number 949254. Testing of this substance confirmed only 25.32 grams of cocaine. The State, therefore, failed to introduce sufficient evidence to prove the charged offense, namely, that defendant possessed with the intent to deliver more than 100 grams but less than 400 grams of a substance containing cocaine.

■ However, although the State failed to prove the charged offense, it did prove defendant guilty of possession of "15 grams or more but less than 100 grams of a substance containing cocaine" with the intent to deliver. (Ill. Rev. Stat. 1991, ch. 56$\frac{1}{2}$, par.

1401(a)(2)(A) (now 720 ILCS 570/401 (a)(2)(A) (West 1992)).) Although an accused cannot be convicted of a crime with which he has not been charged, he "may be convicted of an offense not expressly included in the charging instrument if that offense is a 'lesser included offense' of the offense expressly charged." (*People v. Jones* (1992), 149 Ill. 2d 288, 292, 595 N.E.2d 1071, 1073.) Additionally, pursuant to Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), the reviewing court may reduce the degree of the offense for which defendant was convicted. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 527, 281 N.E.2d 389, 393.) Consequently, we reduce the degree of the offense to possession of more than 15 but less than 100 grams of cocaine with the intent to deliver. This lesser offense carries with it a prison term of "not less than 6 years and not more than 30 years" (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1992))) whereas the greater offense mandates a prison sentence of "not less than 9 years and not more than 40 years." (Ill. Rev. Stat. 1991, ch. 56$^{1}$/$_{2}$, par. 1401(a)(2)(B) (now 720 ILCS 570/401(a)(2)(B) (West 1992)).) Although the sentence already imposed on defendant does fall within the statutory limits of both offenses, we believe it appropriate to remand to the trial court for resentencing in light of the fact that the degree of the offense of which defendant was convicted has been reduced.

In light of our disposition of this case, we need not address defendant's final contentions that he was denied the effective assistance of counsel or that the trial judge relied upon improper evidence in convicting defendant.

For the foregoing reasons, we reduce defendant's conviction and remand for proceedings consistent with this opinion.

Affirmed as modified and remanded with directions.

CAMPBELL, P.J., and MANNING,[1] J., concur.

---

[1]Justice Manning concurred in the opinion of the court before her resignation.