THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL L. PERRY, Defendant-Appellant.

Second District No. 2—04—0398

Opinion filed October 7, 2005.

704

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

JUSTICE KAPALA delivered the opinion of the court:

Defendant, Michael L. Perry, appeals from his conviction in the circuit court of Du Page County of theft by deception (720 ILCS 5/16—1(a)(2)(A) (West 2000)). We affirm as modified and remand for a new sentencing hearing.

## I. BACKGROUND

Defendant was convicted at a jury trial of theft by deception (720

ILCS 5/16—1(a)(2)(A) (West 2000)) for failing to pay charges related to a hotel room he and his wife and children used. At trial the following evidence was presented. The State called Kimberly Turnage, who was the senior sales manager at the Embassy Suites, in Lombard, Illinois. Her responsibilities included booking rooms for lodging and meetings and negotiating rates. In January 2000, Turnage was contacted by defendant. Defendant was already staying at the Embassy Suites. He indicated to Turnage that he wished to negotiate a long-term rate because he would be staying for an extended time for business reasons.

As a result of their conversation, Turnage drafted a confirmation letter containing different stay dates and a discounted room rate. Defendant then sent a letter to Turnage indicating that he wished to set up direct billing to his company, Prolific Development Corp. Defendant's letter also contained various trade references. The confirmation letter sent by Turnage was signed by defendant and returned to Turnage. Turnage then passed these documents on to the Embassy Suites accounting department.

On cross-examination, Turnage admitted that defendant's letter to her requested a reduction in the rate quoted in the confirmation letter. However, defendant did eventually accept the rate in the confirmation letter by signing it. Further, Turnage admitted that she had more than one conversation with defendant regarding the room rate. Turnage also did not request a deposit on the contract because defendant was already staying at the hotel when he contacted Turnage. However, Turnage did at one point prepare a credit card authorization letter because defendant wished to pay some of his charges with the credit card of someone named Brian Green. The letter was prepared so that Green could authorize the use of his credit card to pay some of defendant's room charges. Turnage further admitted that none of the vendors defendant listed as references was checked.

On redirect examination, Turnage stated that account balances and direct billing were not part of her duties. Further, she testified that the credit card authorization letter prepared for Green's signature had never been signed. However, she was unaware of whether any charges were incurred on Green's card, as this knowledge was beyond the scope of her duties. On re-cross-examination, Turnage indicated that the credit card authorization letter was faxed to Green.

The State also called Sandra Deen Neely to the stand. Neely was the director of human resources at the Embassy Suites in downtown Chicago. Neely had previously worked at the Embassy Suites in Lombard as the assistant deputy manager responsible for day-to-day opera-

tions. As the assistant deputy manager, Neely became familiar with the guests at the hotel, especially the longer-term guests. Neely was the assistant deputy during the period of February 2000 through May 2000. During this time, she became familiar with defendant because he was a long-term guest. Neely estimated that she had contact with defendant about four times, which consisted of just greetings.

Although Neely had not spoken with defendant about billing or his account, she did become aware around April or May 2000 that there was a problem with defendant's billing and his account. This information was relayed to her by the controller of the hotel, Karen Trajkovich. Trajkovich was responsible for billing and accounting. Trajkovich provided Neely with defendant's letter requesting billing directly to Prolific and with defendant's list of references. Both documents were on "Prolific Development Corp." letterhead, which included an address, phone number, fax number, and e-mail address. The letter indicated that defendant was the president of Prolific. The documents also listed defendant and Lee Mandel, CPA, as the contact persons. Neely attempted to contact defendant through the e-mail address listed on the letterhead but was unsuccessful. Neely also contacted Lee Mandel, and he informed her that he was not connected with Prolific. Neely then contacted Budget Rent-A-Car because defendant had listed the company as a trade reference. Budget informed Neely that defendant did not have a valid account with the company. She was aware from defendant's file that his charges were in excess of $15,000. According to Neely, defendant never contacted her or made any efforts to pay his bill.

On cross-examination, Neely admitted that up until the point that she became involved with defendant's account, the responsibility for the account would have been solely with the controller. Further, she testified that the accounting department normally set up a process through the corporate office to check trade references before setting up direct billing. However, that was not done in this case, because the accounting department did not feel that it had all of the information that the corporate office required. Nonetheless, the general manager of the hotel signed off on the direct billing request without checking any of defendant's trade references. Neely admitted that even though the references were submitted by defendant in January 2000, they were not checked until May 2000. At the time defendant and his family initially checked in, they paid for their room with a credit card.

The State next called Trajkovich to the stand. She testified that she had been employed by the Embassy Suites in Lombard since November 1992 and has been controller since July 1999. Trajkovich was approached by Turnage to set up direct billing for defendant. Tur-

nage provided Trajkovich with the letter and reference sheet from defendant. Trajkovich testified that the usual practice for approving direct billing requests involved running all application materials through the corporate office. This process required Trajkovich to supply background data such as bank information. The basic process involved a type of credit check based on the person's banking information. However, Trajkovich did not have the required information with respect to defendant.

Trajkovich then informed Turnage that direct billing could not be set up due to the lack of information. Subsequently, the general manager at the time, Robert Hjort, approached Trajkovich and told her to set up direct billing for defendant anyway and that Hjort would approve it. As a result of this request, Trajkovich set up the direct billing account for defendant. The account was set up to bill Prolific as defendant had requested in his letter. Hjort signed the authorization for direct billing. Direct billing for defendant's charges began on February 8, 2000. Trajkovich sent a letter to defendant indicating the approval of his direct billing request. Among the terms indicated in the letter was that payment was due within 30 days of the statement date.

The first bill sent to Prolific was for $3,877.94 and included room charges plus tax as well as restaurant charges and copying charges. The bill was sent on March 3, 2000, to the address for Prolific that had been provided by defendant. On March 20, 2000, Trajkovich sent out another bill, again mailing it to Prolific. This bill showed the previous balance of $3,877.94, which had remained unpaid, and new charges totaling $3,106.79, for a total due of $6,984.73. This new grand total covered charges from February 8, 2000, through March 16, 2000, and included charges for the room, tax, restaurant charges, laundry charges, and phone calls. There was a tax credit on the bill because after 30 days of stay, tax was no longer charged by the state. On April 4, 2000, because defendant had failed to pay any of the charges, Trajkovich left defendant a message at the phone number that defendant had provided in his letter. She left a message indicating that there was an outstanding balance and requesting the status of the payment. Defendant did not return the phone call.

On April 14, 2000, Trajkovich mailed to Prolific another billing statement, which stated the current and total charges, and a collection letter, which stated that payment was past due and that prompt payment would be appreciated. The total charges indicated in the statement and letter were through April 9, 2000, and amounted to $10,033.11. The new charges included room charges, restaurant charges, laundry charges, phone calls, and a postage charge. On April

28, 2000, Trajkovich sent another bill and collection letter because she had yet to receive a payment or a response from defendant. She slid this letter under defendant's hotel room door when she did not receive any payment or response after she mailed the letter. This letter indicated that over 60 days had passed since the initial bill had been mailed, that $10,033.11 was the previous unpaid balance, and that the current charges amounted to $1,992.81. The total balance amounted to $12,025.92 and covered February 8, 2000, through April 19, 2000. The letter also informed defendant to contact Trajkovich if he needed an explanation of the charges. Once again there were additional charges for incidentals consisting of restaurant charges and laundry charges. No payment or response was made.

Following defendant's conviction and the denial of his motion for a new trial, the trial court sentenced defendant to six years in the Illinois Department of Corrections and ordered that he pay restitution to the Embassy Suites. This appeal followed.

## II. DISCUSSION

Defendant asserts four contentions on appeal. First, that he was not proven guilty beyond a reasonable doubt, because the evidence was insufficient to establish that he intended to deceive or defraud the Embassy Suites. Second, that the State failed to prove beyond a reasonable doubt that he intended to permanently deprive the Embassy Suites of property. Third, that his trial counsel was ineffective such that a new trial is warranted. Fourth, and finally, that the evidence was insufficient to prove that he stole property worth over $10,000. Because we find that defendant's fourth contention impacts our analysis with respect to the first three contentions, we will begin our analysis by addressing defendant's fourth contention. Further, we note that only our analysis of defendant's fourth contention is contained in the published portion of this opinion and the remainder of our analysis is contained in the unpublished portion.

### A. Proof That the Property Stolen Exceeded $10,000 in Value

■ Defendant contends that the State has failed to prove beyond a reasonable doubt that the property he stole by deception exceeded $10,000 in value. The offense of theft by deception requires that a person "knowingly *** [o]btain[ ] by deception control over property of the owner" and "[i]ntend[ ] to deprive the owner permanently of the use or benefit of the property." 720 ILCS 5/16—1(a)(2)(A) (West 2000); *People v. Kotlarz*, 193 Ill. 2d 272, 299 (2000). To prove the offense of theft by deception, the State must show that: (1) the victim was induced to part with property; (2) the transfer of the property was based upon deception; (3) the defendant intended to permanently

deprive the victim of the property; and (4) the defendant acted with specific intent to defraud the victim. See *Kotlarz*, 193 Ill. 2d at 299. Subsection (b) of section 16—1 of the Criminal Code of 1961 (Code) delineates different sentences dependent upon various factors, including the value of the property taken by deception. See 720 ILCS 5/16—1(b) (West 2000). Defendant in this case was sentenced under subsection (b)(5), which reads, "[t]heft of property exceeding $10,000 and not exceeding $100,000 in value is a Class 2 felony." 720 ILCS 5/16—1(b)(5) (West 2000). Defendant claims that the State has not proven that the value of the property stolen exceeded $10,000, because the right to use the hotel room was not property within the meaning of section 16—1.

Generally, in reviewing the sufficiency of the evidence to sustain a verdict on appeal, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). However, defendant's contention sets forth a legal question. Namely, does property, as defined for purposes of section 16—1, include the value of the right to use the hotel room? Therefore, defendant presents an issue of statutory construction, which we review *de novo*. *People v. Ward*, 215 Ill. 2d 317, 324 (2005).

Preliminarily, we must address the State's contention that defendant has waived this issue by failing to raise it in the trial court. Defendant admits that he failed to raise the issue in the trial court but contends that a sufficiency of the evidence argument cannot be waived. The State responds that defendant is raising a sentencing issue and, therefore, waived this issue by failing to object at the sentencing hearing or in a postsentencing motion. We agree with defendant that this issue is one of sufficiency of the evidence and, therefore, can be raised at any time.

Defendant correctly contends that the value of the property was an element of the offense of theft in this case. More specifically, subsection (c) of section 16—1 states that "[w]hen a charge of theft of property exceeding a specified value is brought, the value of the property involved is an element of the offense to be resolved by the trier of fact as either exceeding or not exceeding the specified value." 720 ILCS 5/16—1(c) (West 2000). Therefore, there can be no doubt that the value of the property was an element of the offense in this case. Generally, a defendant must both specifically object at trial and raise the issue again in a posttrial motion to preserve any alleged er-

ror for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the doctrine of waiver is inapplicable when a defendant challenges the sufficiency of the evidence. *People v. Enoch*, 122 Ill. 2d at 190. Because defendant's contention is that the evidence was insufficient to show that the value of the property exceeded $10,000, because the value of the right to use the hotel room was not "property" within the meaning of section 16—1, we find waiver to be inapplicable.

■ Turning to the merits of defendant's contention, we first note that the cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Ward*, 215 Ill. 2d at 324. The best indicator of legislative intent is the language of the statute, which is to be given its plain and ordinary meaning. *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 291 (2004). In this case, section 16—1 requires that defendant obtained control over the "property" of another. 720 ILCS 5/16—1 (West 2000). Section 15—1 of the Code defines property for purposes of section 16—1. 720 ILCS 5/15—1 (West 2000). Section 15—1 states:

> " '[P]roperty' means anything of value. Property includes real estate, money, commercial instruments, admission or transportation tickets, written instruments representing or embodying rights concerning anything of value, labor, or services, or otherwise of value to the owner; things growing on, affixed to, or found on land, or part of or affixed to any building; electricity, gas and water; telecommunications services; birds, animals and fish, which ordinarily are kept in a state of confinement; food and drink; samples, cultures, microorganisms, specimens, records, recordings, documents, blueprints, drawings, maps, and whole or partial copies, descriptions, photographs, computer programs or data, prototypes or models thereof, or any other articles, materials, devices, substances and whole or partial copies, descriptions, photographs, prototypes, or models thereof which constitute, represent, evidence, reflect or record a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention, or improvement." 720 ILCS 5/15—1 (West 2000).

Defendant contends that the right to use the hotel room was not property within the meaning of section 15—1. We agree.

In determining the scope of section 15—1, we find the court's decision in *People v. Davis*, 203 Ill. App. 3d 838 (1990), instructive. The alleged "property" at issue in *Davis* was the value of an employee's anticipated labor. *Davis*, 203 Ill. App. 3d at 842. The court discussed the meaning of property for purposes of theft, and thus the meaning of property as defined in section 15—1, by first noting that, at common law, property for purposes of theft, known at the time as larceny,

included only tangible personal property and excluded electrical energy, water power, written documents such as deeds and contracts, and things growing on, affixed to, or found on land partaking the nature of realty. *Davis*, 203 Ill. App. 3d at 844-45. Then, turning to the language of section 15—1, the court found that including the value of an employee's anticipated labor under the definition of property delineated in section 15—1 would require "a liberal and expansive interpretation of the general definition, 'anything of value.' " *Davis*, 203 Ill. App. 3d at 846. The court held that the legislature did not intend such an open-ended interpretation. *Davis*, 203 Ill. App. 3d at 846. In so holding, the court recognized that section 15—1 listed items as property that, at common law, would not have been considered property for purposes of the crime of larceny. *Davis*, 203 Ill. App. 3d at 846. Thus, the court found that section 15—1 was in derogation of the common law and, therefore, should be strictly construed. *Davis*, 203 Ill. App. 3d at 846.

In further analyzing section 15—1, the court next stated that the general term defining property as "anything of value" was followed by specific items. *Davis*, 203 Ill. App. 3d at 846. The list of specific items is preceded by the words, "[p]roperty includes." 720 ILCS 5/15—1 (West 2000). According to the *Davis* court, use of the word "includes" did not by itself necessarily limit the general term. *Davis*, 203 Ill. App. 3d at 846. The court pointed out that some cases had held that the use of the word "includes" was meant to broaden or enlarge the interpretation of a term, that is, the legislature's intent in using the word "includes" was "to provide as large an access as possible to the general term." *Davis*, 203 Ill. App. 3d at 846, citing *Greyhound Lines, Inc. v. City of Chicago*, 24 Ill. App. 3d 718, 727 (1974). Other cases have held that "includes" is sometimes used to add to the general class a species that does not naturally belong to it. *Davis*, 203 Ill. App. 3d at 846, citing *Illinois Central R.R. Co. v. Franklin County*, 387 Ill. 301 (1944).

In the case of section 15—1, the court held that "includes" was used more akin to the latter use described above, that is, to add species to the general class, not to enlarge the general class itself. More specifically, the court held that the specific items listed after "includes" are "an enumeration excluding all other things not in the specific category." *Davis*, 203 Ill. App. 3d at 846. Thus, in accordance with the principle that statutes in derogation of the common law should be strictly construed, the court held that property as defined in section 15—1 meant "tangible personal property *or* property which falls within the specific categories enumerated in the definition." (Emphasis added.) *Davis*, 203 Ill. App. 3d at 846. That is, the court

determined that the enumerated list did not enlarge access to the general term "anything of value" but instead added independent categories of property. Further, the court found that such an interpretation comported with the requirement that criminal or penal statutes are to be strictly construed in favor of the accused and with the constitutional requirement that criminal statutes must be definite. *Davis*, 203 Ill. App. 3d at 846-47.

The version of section 15—1 applicable in *Davis* is identical to the current statute except, unlike the current statute, it did not list "telecommunications services" as an enumerated type of property. Compare Ill. Rev. Stat. 1981, ch. 38, par. 15—1, with 720 ILCS 5/15—1 (West 2000). Therefore, the rationale of *Davis* is still applicable.

Moreover, we believe that the decision of the *Davis* court manifests the legislature's intent. In *Davis*, we believe, the court implicitly recognized that the word "includes" as used in section 15—1 was ambiguous. This recognition is evident because the court explicitly noted that the word "includes" has more than one reasonable meaning. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003).

The court recognized that "includes" could be read as indicating that the list provides specific examples of the general term. *Davis*, 203 Ill. App. 3d at 846. The list could enumerate items such that the general term must mean something more expansive than it would standing in isolation. Therefore, for purposes of section 15—1, "includes" could be read to indicate that the items following were specific examples of the general class of "anything of value" and that, as a result, "anything of value" could not mean only "tangible personal property," because several of the enumerated items were not tangible personal property. Thus, the use of the word "includes" in this sense would enlarge the meaning of "property" far beyond that of the common-law meaning, because property would embrace many items that are not tangible personal property.

However, the *Davis* court also recognized that "includes" could be interpreted another way. More specifically, the court recognized that "includes" could indicate that the items following were not in any way connected to the general class but, instead, were additional independent enumerations of "property." See *Davis*, 203 Ill. App. 3d at 846. This interpretation of the word "includes" finds support in other cases interpreting criminal provisions. See *United States v. Vargas-Garnica*, 332 F.3d 471, 473-74 (7th Cir. 2003) (holding that the use of the word "includes" in a statute defining "crime of violence" did not add an additional requirement to the general class but instead added separate additional classes not connected to the general class).

In order to resolve this ambiguity, the court employed the rule that a statute in derogation of the common law must be strictly construed. *Cf. Scott v. Rockford Park District*, 263 Ill. App. 3d 853, 857 (1994) (refusing to use the principle of statutory construction that statutes in derogation of the common law are to be strictly construed against the local public entity, because the language of the statute at issue was unambiguous). Had the court chosen the enlarging application of "includes," the definition of "anything of value" would have necessarily been expanded beyond the common-law definition of "property" because the enumerated list, which would represent examples of the general class, contains items that were not considered "property" under the common law. Thus, as we explained above, "anything of value" would mean something more than "tangible personal property" because several of the enumerated items are not tangible personal property. However, by choosing the more limited application of "includes," the court was able to define "anything of value" in accordance with the common law, that is, "tangible personal property," and to limit the additional items that are considered "property" to only those items specifically enumerated. In essence, the *Davis* court chose meanings of "anything of value" and "includes" that, when taken together, limit the derogation of the common law as much as reasonably possible.

We find that this resolution of the ambiguity was the proper one because it limits the expansion of the common-law definition. Further, we believe that the structure of section 15—1 also supports this conclusion. More specifically, if the legislature had intended the items following "includes" to simply be an illustrative list of the general class, it could have written "property is anything of value including ...." However, the legislature instead chose to begin a new sentence with the phrase "[p]roperty includes." We believe that this structure, that is, the beginning of a new sentence, was intended to convey that the items specifically enumerated were in addition to, not part of, the general class.

Our reading finds support in *Vargas-Garnica*. In that case, the statute at issue read:

" ' "Crime of Violence"—

(I) means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and

(II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.' [Citation.]" *Vargas-Garnica*, 332 F.3d at 473.

The court found that the use of the word "and" coupled with "includes" meant that in order to be a "crime of violence" an offense could satisfy *either* part I or part II of the statute. *Vargas-Garnica*, 332 F.3d at 473-74. Additionally, the court found it worthwhile to note that "and" was followed by a new subsection. *Vargas-Garnica*, 332 F.3d at 474. This subsection contained the enumerated offenses. *Vargas-Garnica*, 332 F.3d at 474. In other words, "and" coupled with "includes" followed by a new subsection signaled that the items following were in addition to, not exemplary of, the general definition. This structure is much like the period and beginning of a new sentence in section 15—1.

Further, when the legislature chooses not to amend a statute after judicial construction, it is presumed that the legislature has acquiesced in the court's interpretation of legislative intent. *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 404 (2005). In this case, the legislature has had over a decade to amend the statute if it disagreed with the *Davis* court's interpretation of section 15—1. The only amendment made by the legislature since *Davis* was to add "telecommunications services" to the list of enumerated categories. This addition in no way speaks to or modifies the decision of the *Davis* court. Thus, we presume that the legislature has acquiesced in the *Davis* interpretation. Additionally, we believe that the fact that the legislature actually did amend section 15—1 but did not do anything to change the *Davis* interpretation in the process provides even stronger evidence of the legislature's acquiescence to that interpretation.

■ Consequently, we apply the definition of "property" as set forth by the court in *Davis*, that is, that "property" is tangible personal property or anything specifically enumerated in section 15—1. Under this test, we find that the right to use a hotel room is not tangible personal property and is not listed within the specific enumerated categories of section 15—1. Thus, the value of the right to use the hotel room was not property under section 16—1.

However, the State contends that defendant did not take the right to use the hotel room but, instead, took the monetary value of the rate agreement for the room. The State's contention is unavailing. Defendant "took" the right to use the room. The rate agreement was simply an expression of the value of that right and was not what was taken by defendant. Further, the monetary value of the rate agreement is not tangible personal property nor does it fall into one of the specific categories enumerated in section 15—1. Therefore, even if defendant had "taken" the monetary value of the rate agreement as the State suggests, this value would not be considered property for purposes of section 15—1 or section 16—1.

■ Defendant contends, and the State does not dispute, that without the value of the right to use the hotel room, the proven value of the property stolen is far less than $10,000. However, defendant admits that the State did prove that the value of the items taken that do fit within section 15—1 exceed $300 in value. More specifically, defendant admits that the restaurant charges represent charges for property within the meaning of section 15—1 and that the restaurant charges exceed $300 in value. Therefore, defendant requests that we reduce the degree of his conviction from a Class 2 felony to a Class 3 felony and remand for a new sentencing hearing. Subsection (b)(4) of section 16—1 states that "theft of property exceeding $300 and not exceeding $10,000 in value, is a Class 3 felony." 720 ILCS 5/16—1(b)(4) (West 2000). Further, Supreme Court Rule 615(b)(3) states that on review we may "reduce the degree of the offense of which the appellant was convicted." 134 Ill. 2d R. 615(b)(3).

We find *People v. Williams*, 267 Ill. App. 3d 870 (1994), instructive regarding our use of this power under the facts of this case. In *Williams*, the appellate court held that the State failed to prove beyond a reasonable doubt that the defendant possessed more than 100 grams but less than 400 grams of a substance containing cocaine. *Williams*, 267 Ill. App. 3d at 879. However, the court found that the evidence was sufficient to prove that the defendant possessed more than 15 grams but less than 100 grams of a substance containing cocaine. *Williams*, 267 Ill. App. 3d at 879. This proof, along with the proof of the defendant's intent to deliver, amounted to a lesser degree offense than the crime charged. *Williams*, 267 Ill. App. 3d at 880. The court found that it could rule that a conviction be entered against the defendant for the lesser offense even though it was not the offense charged, because it was a lesser included offense of the offense charged. *Williams*, 267 Ill. App. 3d at 880. Additionally, the court held that Rule 615(b)(3) provided an independent basis upon which it had authority to reduce the degree of the offense. See *Williams*, 267 Ill. App. 3d at 880.

This case is similar to *Williams*. The State failed to prove that the value of the property stolen exceeded $10,000 but succeeded in proving a lesser value. This is akin to the State's failure in *Williams* to prove that the amount possessed was more than 100 grams but less than 400 grams but, instead, proved a lesser amount. Thus, we find that *Williams* and Rule 615(b)(3) give us authority to reduce the degree of defendant's conviction from a Class 2 felony to a Class 3 felony and we choose to exercise this power.

However, before we remand for resentencing, we must determine whether defendant's remaining contentions requesting reversal or, in

716

the alternative, a new trial, have merit. Because we have decided that the only "property" that defendant took was the incidentals and not the right to use the hotel room itself, we consider defendant's remaining contentions only as they relate to such incidentals.

### B. Defendant's Intent to Deceive or Defraud
The material in sections II B through II D is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### III. Conclusion
For the foregoing reasons, we affirm defendant's conviction as modified, reducing his conviction to a Class 3 felony, and we remand the cause for a new sentencing hearing.

Affirmed as modified and remanded.

BOWMAN and GILLERAN JOHNSON, JJ., concur.