THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD ROSENTHAL, Defendant-Appellant.

First District (2nd Division)   No. 1—05—4085

Opinion filed September 1, 2009.

Patricia Unsinn and Patrick F. Cassidy, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald and Marie Quinlivan Czech, Assistant State's Attorneys, of counsel) for the People.

JUSTICE KARNEZIS delivered the opinion of the court:

Defendant Ronald Rosenthal was convicted of felony murder predicated on aggravated battery with a firearm (720 ILCS 5/9—1(a)(3)

(West 2000)) and was sentenced to 45 years' imprisonment. On appeal, defendant argues: (1) his conviction should be reversed because the State failed to prove an independent felonious purpose for the aggravated battery with a firearm; (2) the trial court erred in denying defendant's motion to dismiss the indictment; (3) the jury was given an erroneous instruction; (4) the trial court improperly allowed the State to present prejudicial evidence of defendant's prior bad acts; (5) the trial court abused its discretion when it found that a potential witness had a valid fifth amendment right against self-incrimination; and (6) the State repeatedly misstated the evidence in closing argument. In *People v. Rosenthal*, 383 Ill. App. 3d 32 (2008), we reversed defendant's conviction and sentence. On September 24, 2008, pursuant to its supervisory authority, the Illinois Supreme Court directed this court to vacate its order in *Rosenthal*, 383 Ill. App. 3d 32, and consider whether in light of the holding in *People v. Knaff*, 196 Ill. 2d 460, 478 (2001), remand to the trial court for sentencing on aggravated battery with a firearm was appropriate. *People v. Rosenthal*, 229 Ill. 2d 650 (2008).

In *People v. Rosenthal*, 387 Ill. App. 3d 858 (2008), after considering the supervisory order, we again reversed defendant's conviction and sentence. On May 28, 2009, pursuant to its supervisory authority, the Illinois Supreme Court directed this court to vacate the portion of the judgment in *Rosenthal*, 387 Ill. App. 3d 858, addressing the application of *Knaff*, 196 Ill. 2d 460, and *People v. Williams*, 267 Ill. App. 3d 870 (1994), and to remand for resentencing for the offense of aggravated battery with a firearm. *People v. Rosenthal*, 232 Ill. 2d 592 (2009). The court further directed us to consider any other issues previously raised by defendant but not addressed. As directed by our supreme court, we vacated our December 31, 2008, opinion and after considering defendant's other claims, we remand this cause for defendant to be sentenced for the offense of aggravated battery with a firearm.

## BACKGROUND

Defendant was initially charged with 12 counts of first degree murder, 3 counts of attempted first degree murder, 1 count of aggravated battery with a firearm and 2 counts of aggravated battery. These charges arose from the shooting death of Sherman Mays and the wounding of Tanya Griffin. Prior to trial, the State nol-prossed all counts except count VIII, which was felony murder predicated on aggravated battery with a firearm.

Count VIII alleged that defendant "shot and killed Sherman Mays with a firearm during the commission of a forcible felony, to wit: ag-

gravated battery with a firearm, and during the commission of the offense of first degree murder, Ronald Rosenthal personally discharged a firearm that proximately caused death, in violation of Chapter 720 Act 5 Section 9—1(a)(3) of the Illinois Compiled Statutes 1992." Although Tanya Griffin was mentioned in other counts, including those counts of aggravated battery with a firearm that were dismissed, Griffin was not mentioned as a victim in count VIII.

Prior to trial, defense counsel moved to dismiss the felony murder count arguing that because the shooting of Mays and Griffin was one contemporaneous act, the predicate felonies for the felony murder charges were inherent in the act of killing. In addition, the State moved to preclude defense counsel from presenting evidence that defendant acted in self-defense. The trial court denied both motions and ruled that the defense would be allowed to present a defense of justification, despite the sole count of felony murder, because "there is some evidence that there was provocation."

The following evidence was adduced at trial. Defendant was on his way to a party on the evening of May 17, 2002. He was armed with three guns, two of which belonged to a friend. Defendant's gun was a 9 millimeter and was fully loaded with 10 rounds. While driving to the party, he stopped to talk to Versaille Peynesta, who was standing outside the apartment building where the party was being held. Several witnesses testified that they saw defendant and Peynesta talking.

While they were talking, Sherman Mays came up to them and began "talking crazy." Evidence established that at the time of his death, Mays had a blood alcohol content of .204. The three men then went to the porch of the apartment building, where defendant sat down and put his 9 millimeter on his lap. Several witnesses testified that they saw three men on the porch. Defendant had previously drawn the gun when he was talking to Peynesta. Mays asked defendant if he could see his gun. Defendant gave Mays the gun to look at and Mays then pointed the gun at defendant's head. After defendant asked Mays to return the gun, Mays fired the weapon. The bullet went past defendant's head. Defendant then ran up the stairs and into the apartment where the party was being held. Mays shot at him again. Several witnesses testified that they heard at least one shot. Defendant then exited the apartment through the back door and walked home, leaving his car parked at the location of the party.

Defendant testified that he later returned to the party to retrieve his car. As he was about to enter his car, Jermond Jenkins walked up to defendant and told him that Mays was willing to give him his gun back. Jenkins pointed to the car that Mays was sitting in. Defendant

walked to the car's passenger door and spoke to Mays. Defendant testified that he did not know that Tanya Griffin was in the car. When defendant asked Mays for his gun back, Mays aimed the gun at defendant and shot at him. Defendant pulled out his two guns and started shooting at Mays. Mays suffered 10 fatal bullet wounds. After the shooting, defendant fled to Mississippi. He was arrested a month later when he returned to Chicago. When he was arrested, police confiscated four handguns from his carry-on luggage.

Tanya Griffin testified that Mays was her boyfriend. When she and Mays left the party and got into her car, Mays did not have a gun. However, Griffin had previously told prosecutors that there was a gun under the passenger seat where Mays was sitting. Griffin testified that defendant walked up to the passenger side of her car and started firing, shooting nonstop at close range. Griffin further stated that Mays did not have a gun in his hand, nor did she see him reach for a gun. Jenkins and Dwayne Baker also testified that they did not see a gun in Mays' hand and did not see Mays shoot at defendant.

After hearing all of the evidence, the jury was instructed. There was no mention of Tanya Griffin in any of the instructions provided to the jury. The jury was provided with two verdict forms: guilty of felony murder and not guilty of felony murder. Ultimately, the jury found defendant guilty of felony murder predicated on aggravated battery with a firearm. The trial court sentenced defendant to 45 years' imprisonment. It is from this judgment that defendant now appeals.

## ANALYSIS

Defendant first argues that his conviction for felony murder must be reversed because the predicate offense, aggravated battery with a firearm, was inherent in the shooting of the decedent.

■ A person commits the offense of felony murder when he, without lawful justification, causes another's death while attempting or committing a forcible felony other than second degree murder. 720 ILCS 5/9—1(a)(3) (West 2000). A forcible felony includes aggravated battery with a firearm. 720 ILCS 5/2—8 (West 2000); *People v. Hall*, 291 Ill. App. 3d 411 (1997). The purpose of the felony murder statute is to limit the violence that accompanies the commission of forcible felonies, so that a person engaged in such violence will be automatically subject to a murder prosecution should someone be killed in the course of a forcible felony. *People v. Belk*, 203 Ill. 2d 187, 192 (2003). As such, under the felony murder statute, an offender is responsible for the direct and foreseeable consequences of his initial criminal act. *Belk*, 203 Ill. 2d at 192.

Defendant argues that, similar to *People v. Morgan*, 197 Ill. 2d 404 (2001), the act of aggravated battery with a firearm was inherent in the offense of murder and therefore cannot support a conviction for felony murder. In *Morgan*, the defendant admitted that he shot his grandfather, and then his grandmother as she attempted to flee, because he feared for his life. He was charged with two counts of felony murder predicated on aggravated battery and aggravated discharge of a firearm. The defendant was ultimately convicted of felony murder predicated on aggravated discharge of a firearm. *Morgan*, 197 Ill. 2d at 444.

On appeal to our supreme court, the defendant argued that his conviction should be overturned because the predicate felony, aggravated discharge of a firearm, was not independent of the killings. *Morgan*, 197 Ill. 2d at 444-45. The *Morgan* court agreed, finding that the offense of aggravated discharge of a firearm could not support a conviction for felony murder because, given the facts of the case, aggravated battery and aggravated discharge of a firearm were inherent in the murders of the defendant's grandparents. *Morgan*, 197 Ill. 2d at 447. In discussing the felony murder doctrine, the *Morgan* court expressed concern that, since the State was not required to prove intent to kill in the prosecution of a felony murder charge, the State would be absolved from its duty to prove that a defendant has either an intent to kill or to do great bodily harm. *Morgan*, 197 Ill. 2d at 447. The court noted "every [act of] shooting necessarily encompasses conduct constituting aggravated battery, *i.e.*, great bodily harm, as well as conduct constituting aggravated discharge of a firearm, *i.e.*, discharging a firearm in the direction of another." *Morgan*, 197 Ill. 2d at 447. Consequently, the *Morgan* court held that a defendant cannot be convicted of felony murder when the predicate felony "arose from and [was] inherent in the murder[ ]." *Morgan*, 197 Ill. 2d at 447-48. The court concluded that "the predicate felony underlying a charge of felony murder must have an independent felonious purpose." *Morgan*, 197 Ill. 2d at 458.

The State argues that the case at bar is not controlled by *Morgan* because defendant's act of firing shots into the car had an independent felonious purpose other than killing Mays. At oral argument, the State suggested that defendant intended to "shoot everyone in the car." The State argues that the facts of this case are more similar to those in *People v. Toney*, 337 Ill. App. 3d 122 (2003). In *Toney*, the defendant was convicted of felony murder predicated on aggravated discharge of a firearm on a theory of accountability. *Toney*, 337 Ill. App. 3d at 129. The defendant knowingly drove codefendants to confront rival gang members and a shootout took place where an innocent bystander was

killed. *Toney*, 337 Ill. App. 3d at 140. This court upheld the defendant's conviction on appeal finding that the predicate felony of aggravated discharge of a firearm "was motivated by an independent felonious purpose other than the killing of [the victim]. That conduct involved the independent felonious purpose of discharging firearms in the direction of the Four Corner Hustlers ***." *Toney*, 337 Ill. App. 3d at 135-36. The court further noted that the victim "was not even present when that gun battle began. Rather, he was shot at a different location several minutes after the initial exchange of gunfire by the two rival gangs." *Toney*, 337 Ill. App. 3d at 135.

In accordance with *Morgan*, we must review the facts of the case to determine whether the predicate felony "arose from" or was "inherent in" the murder of the victim: if so, a felony murder charge is not legally proper, but if not, a felony murder charge is appropriate. See *Toney*, 337 Ill. App. 3d at 132 ("the factual context surrounding the murder is critical in determining whether the forcible felony can serve as a predicate felony for felony murder"); see also *People v. Pelt*, 207 Ill. 2d 434, 442-43 (2003) (the predicate felony underlying the charge of felony murder must involve conduct with a felonious purpose other than the conduct which killed the victim).

As previously discussed, the State proceeded to trial on one count, count VIII of the indictment, of felony murder predicated on aggravated battery with a firearm. The only victim named in that count was Sherman Mays. Griffin was not named as a victim. Nonetheless, prior to the commencement of trial, the State indicated that, with respect to count VIII, it intended to prove that defendant was committing an aggravated battery with a firearm against Griffin and while doing so "shot and killed Sherman Mays with a firearm during the commission of a forcible felony, to wit: aggravated battery with a firearm, and during the commission of the offense of first degree murder, Ronald Rosenthal personally discharged a firearm that proximately caused death, in violation of Chapter 720 Act 5 Section 9—1(a)(3) of the Illinois Compiled Statutes 1992." Despite its statement to the contrary, the State actually proceeded on the theory that Mays was the victim of the aggravated battery with a firearm.

As the record in this case indicates, the State repeatedly argued that defendant had "motive" to shoot Mays, that he did it for "revenge," that he "executed" Mays, and that he did it in "cold blood." This type of argument certainly does not support the State's theory that defendant intended to commit an aggravated battery with a firearm against Griffin. Likewise, the State used the theory of transferred intent to explain to the jury that it could find defendant intentionally caused injury to Griffin by transferring defendant's

intent to commit an aggravated battery against Mays to Griffin. The State argued in closing:

"In this case the defendant intended to shoot or commit aggravated battery with a firearm to Sherman Mays, but he hit, even if it was unintended, Tanya Griffin which I don't believe the evidence bears out. I believe he knew Tanya was in the car.

\* \* \*

I'm telling you what the evidence shows, and I believe the evidence shows he knew Tanya was in the car. But even if you don't believe that, the intent, if he intended to shoot at Sherman, that intent follows the bullet right to Tanya.

\* \* \*

Even if the defendant only intended to shoot at Sherman Mays, if you find that he did so, his intent follows the bullet and he's still guilty of aggravated battery.

\* \* \*

Even if he intended to shoot at Sherman, his intent is transferred and he's guilty of aggravated battery with a firearm of Tanya Griffin."

In addition, while criminal defendants are normally not allowed to assert self-defense against a charge of felony murder (*People v. Moore*, 95 Ill. 2d 404, 411 (1983) (self-defense cannot be raised as a defense to felony murder); see also 720 ILCS 5/7—4(a) (West 2004)), defendant was allowed to assert self-defense in this case because the trial court found that there was some evidence of provocation. When he testified, defendant admitted that he intentionally shot Mays because Mays shot at him; the only question was whether his actions were justified. The evidence established that Mays had been shot 10 times, while Griffin only sustained one gunshot wound to the arm. Defendant testified that he did not even know that Griffin was in the car. As a result, the jury heard a considerable amount of evidence supporting the theory that Mays was the intended victim of the aggravated battery with a firearm.

We find the facts of this case to be more similar to those in *Morgan* than *Toney*. In *Morgan*, as in the case *sub judice*, the same act that formed the basis for the predicate felony was also the same act inherent in the murders. In short, the aggravated battery with a firearm in this case was inherent in the killing of Mays. An independent felonious purpose for the aggravated battery with a firearm simply was not charged or proven. This is especially true in this case given the amount of evidence presented suggesting that defendant intentionally shot Mays and the instructions and verdict forms submitted to the jury.

That being said, the State suggests that should we find defendant's conviction for felony murder predicated on aggravated battery with a firearm to be improper in this case, we should remand for resentencing on the lesser included offense of aggravated battery with a firearm. The State asserts that the aggravated battery with a firearm of Griffin is a lesser included offense of the felony murder charge. In support, the State relies on *People v. Knaff*, 196 Ill. 2d 460 (2001), and *People v. Williams*, 267 Ill. App. 3d 870, 879-80 (1994).

In *Knaff*, the defendant was charged with two counts of unlawful delivery of a controlled substance within 1,000 feet of public housing and two counts of unlawful delivery of a controlled substance. Prior to trial, the State dismissed the two counts of unlawful delivery of a controlled substance and proceeded to trial on the greater charges of unlawful delivery of a controlled substance within 1,000 feet of public housing. *Knaff*, 196 Ill. 2d at 462-64.

At the close of the State's case, the trial court granted the defendant's motion for a directed verdict finding that the State failed to prove the location element of the charge, *i.e.*, that the delivery of the controlled substance occurred within 1,000 feet of public housing. The court found that the evidence was sufficient to prove the lesser offense of unlawful delivery of a controlled substance and allowed the State to amend the indictment. The jury was instructed on the lesser offenses and the defendant was ultimately convicted of the lesser offenses of unlawful delivery of a controlled substance. *Knaff*, 196 Ill. 2d at 463.

On review, the defendant argued that the trial court violated his constitutional and statutory right against double jeopardy when it allowed the State to proceed against him on the lesser included offenses after the court found the evidence insufficient on the greater offenses due to the State's inability to prove location. Our supreme court upheld the decision of the trial court finding that the defendant's rights against double jeopardy were not violated because courts have long recognized a court's ability to reverse a conviction while ordering the entry of a judgment on a lesser included offense. *Knaff*, 196 Ill. 2d at 477-78.

In *Williams*, the defendant was charged with possession with intent to deliver more than 100 but less than 400 grams of cocaine. Following his conviction, the defendant appealed and argued that the State failed to prove that defendant possessed more than 100 grams but less than 400 grams of cocaine because, despite the parties' stipulations to the findings of the chemist, the chemist could have only confirmed 56.76 grams of the substance contained cocaine. *Williams*, 267 Ill. App. 3d at 878.

This court agreed with defendant and found that although the State failed to prove the charged offense, it did prove defendant guilty of possession of more than 15 grams but less than 100 grams of cocaine. *Williams*, 267 Ill. App. 3d at 879. Indicating its authority under Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)) to reduce the degree of the offense for which defendant was convicted, as well as the principle that a defendant " 'may be convicted of an offense not expressly included in the charging instrument if that offense is a "lesser included offense" of the offense expressly charged,' " the *Williams* court reduced the defendant's conviction and remanded for resentencing. *Williams*, 267 Ill. App. 3d at 880, quoting *People v. Jones*, 149 Ill. 2d 288, 292 (1992).

■ Consistent with the holdings in *Knaff* and *Williams*, and as directed by our supreme court's supervisory order, we find that aggravated battery with a firearm is a lesser included offense of felony murder predicated on aggravated battery with a firearm in this case. The jury in this case was instructed as follows:

> "To sustain the charge of first degree murder, the State must prove that when the defendant performed the acts which caused the death of Sherman Mays, the defendant was committing the offense of aggravated battery with a firearm beyond a reasonable doubt. Accordingly, you may find the defendant guilty of first degree murder only if you also find the defendant was committing the offense of aggravated battery with a firearm beyond a reasonable doubt."

Thus, inherent in the verdict finding defendant guilty of murder, the jury also found defendant guilty beyond a reasonable doubt of the predicate aggravated battery with a firearm of Griffin. Consequently, as directed by our supreme court, we reverse and remand for resentencing on aggravated battery with a firearm.

Defendant next claims that the trial court erred when it denied defendant's motion to dismiss the indictment because the indictment failed to state an offense and was not specific enough to protect the defendant from double jeopardy.

Prior to trial, defense counsel moved to dismiss all of the felony murder counts, including count VIII, arguing that the charges of felony murder did not specify that he had a felonious purpose, independent of the murder, to commit an aggravated battery against Griffin. Defendant contends that had the court granted his motion, the State would have been required to proceed to trial on the intentional and knowing murder counts, which would have allowed defendant to request a second degree murder instruction. Defendant urges this court to recognize that an independent felonious intent for the felony

murder did not exist in this case and suggests that we find the trial court erred in not dismissing the indictment.

A trial court may dismiss criminal charges *before trial* only for reasons set forth in section 114—1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—1 (West 2002)) or where there has been a clear denial of due process that prejudices defendant. *People v. Sparks*, 221 Ill. App. 3d 546, 547-48 (1991). Specifically, section 114—1 allows for the trial court to dismiss an indictment when:

"(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

(1) The defendant has not been placed on trial in compliance with Section 103—5 of this Code.

(2) The prosecution of the offense is barred by Sections 3—3 through 3—8 of the Criminal Code of 1961, as heretofore and hereafter amended.

(3) The defendant has received immunity from prosecution for the offense charged.

(4) The indictment was returned by a Grand Jury which was improperly selected and which results in substantial injustice to the defendant.

(5) The indictment was returned by a Grand Jury which acted contrary to Article 112 of this Code and which results in substantial injustice to the defendant.

(6) The court in which the charge has been filed does not have jurisdiction.

(7) The county is an improper place of trial.

(8) The charge does not state an offense.

(9) The indictment is based solely upon the testimony of an incompetent witness.

(10) The defendant is misnamed in the charge and the misnomer results in substantial injustice to the defendant.
 * * *

(b) The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefore, except as to subsections (a)(6) and (a)(8) of this Section, are waived." 725 ILCS 5/114—1 (West 2004).

■ However, as we have previously discussed, an independent felonious purpose for the aggravated battery with a firearm simply was not charged or proven in this case. Given that we are remanding for resentencing on the lesser offense of aggravated battery with a

firearm, we find that any alleged error with respect to the trial court failing to dismiss the indictment to be harmless.

■ Defendant claims that counsel was ineffective when he requested that the jury be instructed with a modified version of Illinois Pattern Jury Instructions, Criminal, No. 7.02X (4th ed. 2000) (hereinafter IPI Criminal 4th) because the jury was not given a verdict form for the underlying felony of aggravated battery with a firearm.

IPI Criminal 4th No. 7.02X instructs the jury that it cannot convict the defendant of first degree murder, based on the felony murder doctrine, if it does not also find the defendant guilty of the underlying felony. Furthermore, it instructs the jury that if it finds the defendant not guilty of the underlying felony, it must acquit the defendant of murder.

Despite the fact that the committee notes to IPI Criminal 4th No. 7.02X state this instruction "should be used to avoid legally inconsistent verdicts that could arise when the jury is to be instructed on first degree murder under Instruction 7.02 and the *sole* basis for conviction is the felony murder doctrine" defense counsel repeatedly requested the instruction and the trial court eventually gave the requested instruction over the objection of the State. (Emphasis in original.) IPI Criminal 4th No. 7.02X, Committee Note, at 196. The jury was instructed as follows:

"To sustain the charge of first degree murder, the State must prove that when the defendant performed the acts which caused the death of Sherman Mays, the defendant was committing the offense of aggravated battery with a firearm beyond a reasonable doubt. Accordingly, you may find the defendant guilty of first degree murder only if you also find the defendant was committing the offense of aggravated battery with a firearm beyond a reasonable doubt.

If you find the defendant was not committing the offense of aggravated battery with a firearm beyond a reasonable doubt, then you must find the defendant not guilty of first degree murder."

Defendant claims that this instruction likely confused the jury where the jury was not provided with a separate verdict form for the underlying felony of aggravated battery with a firearm and caused the jury to believe that its determination of whether defendant committed the underlying felony was dispositive of whether he committed murder. Furthermore, because there was no possibility of inconsistent verdicts, there was no need to give this instruction. Defendant acquiesces that this issue is not preserved for review. However, he urges us to consider that trial counsel was ineffective for requesting this erroneous instruction.

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

Under the first prong of the *Strickland* test, defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, defendant must overcome the presumption that under the circumstances, the challenged action, 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 100 L. Ed. 83, 93, 76 S. Ct. 158, 164 (1955).

A defendant satisfies the second prong of *Strickland* if he can show that a reasonable probability exists that, had counsel not erred, the trier of fact would not have found him guilty beyond a reasonable doubt. *People v. Caballero*, 126 Ill. 2d 248, 260 (1989). Where the defendant fails to prove prejudice, the reviewing court need not determine whether counsel's performance constituted less than reasonable assistance. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Flores*, 153 Ill. 2d 264, 284 (1992).

In assessing whether trial counsel's performance was objectively unreasonable, we consider the holding in *People v. Wales*, 357 Ill. App. 3d 153 (2005). In *Wales*, the defendant argued that it was error for the trial court to refuse to give IPI Criminal 4th No. 7.02X where the sole basis for defendant's conviction was the felony murder doctrine. *Wales*, 357 Ill. App. 3d at 158. This court found that giving IPI Criminal 4th No. 7.02X would only serve to confuse the jury because the jury was not rendering verdicts on the underlying felonies. The sole count before it was felony murder. The *Wales* court noted:

"Under these circumstances, giving IPI Criminal 4th No. 7.02X would have served only to confuse the jury. The clear meaning of the IPI Criminal 4th No. 7.02X committee notes is that IPI Criminal 4th No. 7.02X should be used when the jury is to be instructed on first degree murder under IPI Criminal 4th No. 7.02, the sole basis for conviction is the felony-murder doctrine, and the jury is rendering verdicts on the underlying felonies." *Wales*, 357 Ill. App. 3d at 159.

While defense counsel's performance may have been objectively unreasonable when she requested that the trial court give IPI Criminal 4th No. 7.02X, despite the warnings in the Committee Comments and in *Wales*, given our conclusion that the State failed to prove an independent felonious purpose for the murder, any error with respect to the jury instruction is harmless.

■ Defendant claims that the trial court erroneously barred the testimony of Versaille Peynesta, who would have corroborated defendant's testimony and established that Mays did, in fact, have a gun during the incident. After speaking with Peynesta, defense counsel wanted to call Peynesta to testify. Peynesta had told defense counsel that he knew both the defendant and Mays. On the night of the shooting, Mays, who was very intoxicated, approached Peynesta and defendant. Defendant informed Peynesta that the Vice Lords were looking for him. Peynesta told defendant that he was not worried because he had a gun. Defendant then showed Peynesta his gun. When Mays saw defendant's gun he asked if he could see it. Defendant handed the gun to Mays. Mays then would not give the gun back to defendant, pointed the gun at defendant twice and then fired it past defendant's head.

Defendant ran up the stairs and Mays fired a shot at the window. Peynesta then wrestled with Mays for the gun. Mays finally put the gun away. Peynesta then asked Mays to leave the party and went back inside. Defendant also left the party. Peynesta said that he then heard shots and went outside. He saw Mays getting out of a car, still holding defendant's gun. Mays fell to the ground injured. By the time the ambulance arrived, Mays no longer had the gun.

Defense counsel argued that Peynesta's testimony was crucial because it would establish that Mays had taken defendant's gun and fired it at defendant's head before defendant shot and killed Mays, and that Mays still had defendant's gun after defendant shot Mays with his two other guns. However, at the time of defendant's trial, Peynesta was incarcerated and awaiting trial for a murder in an unrelated case. Peynesta's counsel filed a motion to prevent him from testifying claiming that he would be forced to incriminate himself. Specifically, Peynesta's counsel argued that Peynesta would be compelled to answer questions under oath about whether he was in possession of a gun upon a public way and about his relationship to gangs and gang members. Furthermore, because Peynesta is a convicted felon, it would be a crime for him to possess a firearm on a public way. Defense counsel responded that she would not ask Peynesta to admit that he was in possession of a weapon that night and also noted that the trial court had previously prohibited any mention

of gangs. The State responded that it intended to elicit from Peynesta on cross-examination that gangs were looking for him and that he was carrying a gun that night. The trial court ultimately excused Peynesta from testifying finding that Peynesta had a fifth and fourteenth amendment right against self-incrimination. Defendant claims that this ruling was erroneous where Peynesta faced no danger of incriminating himself from any direct questions relevant to this case.

The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. This provision applies to the states through the fourteenth amendment. U.S. Const., amend. XIV; *Allen v. Illinois*, 478 U.S. 364, 368, 92 L. Ed. 2d 296, 303, 106 S. Ct. 2988, 2991 (1986). The fifth amendment privilege against self-incrimination gives a person the right to refuse to testify against himself or herself when the testimony may incriminate the person in future criminal proceedings. *Allen*, 478 U.S. at 368, 92 L. Ed. 2d at 303-04, 106 S. Ct. at 2991.

The privilege against self-incrimination must be liberally construed in favor of the accused or witness. *Hoffman v. United States*, 341 U.S. 479, 487, 95 L. Ed. 1118, 1125, 71 S. Ct. 814, 818 (1951); *People v. Newmark*, 312 Ill. 625, 632 (1924). The trial court had the discretion to determine whether the witness has a valid basis for invoking the fifth amendment right against self-incrimination. *People v. Redd*, 135 Ill. 2d 252, 304 (1990).

In this case, the trial court heard from defense counsel regarding the testimony he hoped to elicit from Peynesta. The court also heard from the State regarding the questions it would pose to Peynesta on cross-examination. After considering all of this, the court made an informed decision that Peynesta was in danger of incriminating himself. This ruling by the trial court was not an abuse of discretion.

■ Next defendant argues that the trial court erred in reversing a previous ruling and permitting the State to elicit that, when defendant was arrested two months after the shooting, he had just returned to Chicago on a Greyhound bus and was carrying four handguns in his carry-on luggage.

Prior to trial, the court granted a defense motion *in limine* to prevent the State from mentioning that defendant was armed at the time of his arrest. The defense argued that there was no connection between the four guns confiscated from defendant when he was arrested and the shooting on May 18, 2002. The court granted defendant's motion.

When defendant testified on direct examination, he stated when he left Chicago for his grandfather's house in Mississippi immediately

after the incident, he was remorseful. He further testified that he returned to Chicago by Greyhound bus from Mississippi after staying with his grandfather for approximately two months. Upon returning to Chicago defendant planned on turning himself in to police. However, he was arrested at the Greyhound station upon arrival there.

Subsequent to defendant's direct examination, the State argued in chambers that it wanted to revisit the ruling on defendant's motion *in limine*. The State argued that defendant had "opened the door" when he testified that he was remorseful and wanted to turn himself in and that this testimony was directly rebutted because when he got off the bus, defendant had four weapons in his possession. The court reversed its ruling finding that the fact that defendant "was packing four handguns" was inconsistent with his intention to turn himself in or with remorse. Following this ruling, the State elicited on cross-examination of defendant that when defendant was arrested at the Greyhound station, the police found four handguns in his carry-on luggage.

Generally, evidence of other crimes is inadmissible where that evidence is relevant solely to demonstrate defendant's propensity to engage in criminal activity. *People v. Heard*, 187 Ill. 2d 36, 58 (1999). This is because "[s]uch evidence overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment." *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980). Such evidence is admissible however, where relevant for any purpose other than to show the propensity to commit crime. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991). Evidence of other crimes is generally relevant to prove *modus operandi*, intent, identity, motive or absence of mistake. *People v. McKibbins*, 96 Ill. 2d 176, 182 (1983).

When evidence of other crimes is offered, even if relevant for a permissible purpose, it may be excluded if its prejudicial effect substantially outweighs its probative value. *Heard*, 187 Ill. 2d at 58. A trial court should exclude other crimes evidence when the prejudicial effect substantially outweighs the probative value. *Illgen*, 145 Ill. 2d at 365. The admissibility of other crimes evidence rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *People v. Robinson*, 167 Ill. 2d 53, 63 (1995).

In this case, the trial court ruled that the evidence that defendant returned to Chicago with four handguns was relevant to rebut defendant's claims that he was remorseful and intended to turn himself in. The court clearly weighed the probative value of such evidence against any possible prejudicial effect. We will not overturn the court's ruling on this issue where the court did not abuse its discretion.

■ Finally, defendant argues that the State misstated the evidence and made baseless assertions in its rebuttal argument to make it appear that defendant was the only witness who said that Mays had a gun at the time of the murder. Defendant claims that this argument was disingenuous because the State knew that Peynesta would have corroborated defendant's testimony.

It is well settled that prosecutors are afforded wide latitude in closing argument, and even improper remarks do not merit reversal unless they result in substantial prejudice to the defendant. *People v. Kitchen*, 159 Ill. 2d 1, 38 (1994). During closing argument, the prosecutor may properly comment on the evidence presented or reasonable inferences drawn from that evidence, respond to comments made by defense counsel that clearly invite response, and comment on the credibility of witnesses. *People v. Rader*, 178 Ill. App. 3d 453, 466 (1988). In reviewing whether comments made during closing argument are proper, the closing argument must be viewed in its entirety, and remarks must be viewed in context. *Kitchen*, 159 Ill. 2d at 38. A trial court's determination regarding the propriety of closing arguments will not be disturbed absent an abuse of discretion. *People v. Byron*, 164 Ill. 2d 279 (1995).

Defendant complains that the State improperly argued: (1) no one other than defendant said they saw a gun in Mays' hand, contrary to Latimore's and Griffin's testimony; and (2) "nobody knows" if there had been a gun in the car even though Griffin had said there was a gun in the car; and (3) defendant never gave his gun to Mays despite overwhelming evidence that he did. Defendant argues that the State made these arguments knowing that Peynesta would have contradicted them.

Several of the State's remarks that defendant now claims were error, were not objected to at trial and are consequently waived. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988) (issues not raised at trial and included in a posttrial motion are waived for purposes of review). Despite the fact that defendant did not preserve all of these arguments for appeal, we find that no error occurred. Viewing the transcript of closing arguments in this case in its entirety, we find that defendant was not prejudiced by the State's remarks during rebuttal closing argument. The remarks that defendant complains of were invited by defense counsel's argument during closing argument that defendant was acting in self-defense. Defense counsel argued repeatedly that Mays fired first. The State may properly respond to comments made by defense counsel that clearly invite a response. *People v. Hudson*, 157 Ill. 2d 401, 444 (1993). In addition, the State's comments were a fair inference from the evidence

presented. Several witnesses testified that Mays did not have a gun in his hand when defendant shot him. Furthermore, it is irrelevant that the State knew that Peynesta could have possibly contradicted the arguments. Peynesta did not testify after the court ruled that he had a fifth and fourteenth amendment right against self-incrimination.

In sum, we find no reversible error arising from any of the comments complained of. At the close of the evidence, the trial court instructed the jury that closing argument is not evidence. The rulings on the objections and the subsequent instruction were sufficient to cure any possible prejudice that may have arisen from the State's comments. *People v. Tenner*, 157 Ill. 2d 341, 384 (1993). Any possible error was harmless.

Based on the foregoing, pursuant to our supreme court's supervisory order, we affirm in part and reverse and remand for resentencing on aggravated battery with a firearm and instruct the trial court to order the mittimus corrected to reflect defendant's conviction for aggravated battery with a firearm.

Affirmed in part and reversed and remanded in part with instruction.

HOFFMAN and HALL, JJ., concur.